## Dennis Getchell *vs.* Alexander Foster & others.

Three parties agreed in writing " to enter upon an operation embracing the purchasing and selling of shingles," one to purchase and the other two to receive and sell them ; and the shingles to be the property of these two, and all the capital be furnished by them, but the profits and losses to be equally divided among the three. *Held*, that the three were partners as to third persons.

A. made a written contract with B. for the sale of goods " to B.," knowing him to be buying them for a firm of which he was a member. *Held*, that the writing was not conclusive evidence of A.'s intention to give credit to B. individually, and that oral evidence was admissible to bind the firm on the contract.

A. made a written contract with B. for the sale of goods " to B.," who was acting for a firm of which he was a member, payment to be made " in satisfactory paper." A. had no other transaction with B. Before any payment was due on the contract, A. drew on B. in favor of a third person, to whom B. responded by giving a draft on his partners, which was accepted. In an action to recover the price of the goods against the firm, A. testified that he drew on B. in his individual capacity, but admitted that he " calculated," if B. should give a draft which should be accepted or paid, to allow B. the amount when he settled for the goods; and B. testified that he gave the draft in part payment for the goods. *Held*, that the draft must be considered as given in part payment for the goods, and to be allowed for in settlement.

CONTRACT on an account annexed against Alexander Foster, Henry B. Swazey, Napoleon B. McLean, Lafayette Dowling, and Benjamin F. Brown, for clapboards sold and delivered to the defendants. Foster and Swazey alone appeared.

At the trial in the superior court, before *Rockwell*, J., it appeared that on November 1, 1866, an agreement was signed by all the defendants, of which the material parts were as follows : " Memorandum of agreement between McLean & Dowling, of the city of Fredericton, in the province of New Brunswick, merchants, of the first part ; Foster & Swazey, of the city of Boston, commission merchants, of the second part ; and Benjamin F. Brown, of the city of Bangor, trader, of the third part : Whereas the said parties have agreed to enter upon an operation embracing the purchasing and selling of shingles and clapboards upon the terms hereinafter mentioned, Now this agreement witnesseth, that in the said operation the said McLean & Dowling are to attend to the business at Fredericton of receiving, assorting, piling and reshipping all shingles and clapboards under this agreement, and are to receive for the said services and all expenses on account of the same," at a certain rate, " and also all actual costs and expenses of receiving, assorting, piling and reshipping such clapboards. The said Benjamin F. Brown is to devote his time for the interest of all parties in the purchasing of shingles and clapboards, without any charge, except of horse for travelling, and stage-fares, and labor hired for the benefit of the operation, which are chargeable to it. The said Foster & Swazey are to control all sales of shingles and clapboards purchased on joint account, and all proceeds of sales are to come to them, they to keep the accounts of the business and to receive on all sales two and a half per cent., guaranteeing the same, and they to make no other charge for services, except for actual expenses paid out on account of same ; and in case they are unable to make sales of shipments to their port on arrival, and have to wharf and store them at their sheds, they are to receive " at a certain rate therefor. " The shipments from Fredericton to be made as Foster & Swazey may direct, but with the understanding that in case McLean & Dowling can sell at Fredericton any of the shingles and clapboards held on joint account for shipment to better advantage, they are to have the right, with Foster & Swazey's approval, to make such sales. The shingles and clapboards purchased under this agreement are hereby declared to be the property of, and as

purchased for, Foster & Swazey and McLean & Dowling, and the capital required for the operation is to be furnished equally by McLean & Dowling and by Foster & Swazey, on which interest is to be charged. The profits or loss of the business are to be equally divided, say one third to McLean & Dowling, one third to Foster & Swazey, and one third to Benjamin F. Brown. All shingles and clapboards now contracted for and purchased in view of this agreement, and all shingles and clapboards to be hereafter contracted for and purchased thereunder, shall be for the interest of the parties, as herein mentioned."

It further appeared that on May 29, 1867, the plaintiff and Brown signed an agreement of which the material parts were as follows: " Agreement made and entered into this day by and between Dennis Getchell, of Limestone, and Benjamin F. Brown of Bangor, witnesseth : The said Getchell agrees to sell and deliver to said Brown at the wharf of McLean & Dowling, at Fredericton," all of certain kinds of lumber, which " he has now sawed or may saw till the first of July next," at specified prices. " Payment for the same by Benjamin F. Brown's draft of this date on McLean & Dowling for $300, payable in thirty days, the balance in satisfactory paper, payable in thirty days, when all are delivered ; " and that on July 27, 1867, the plaintiff delivered the clapboards, the price of which was now in suit, to McLean & Dowling at Fredericton.

Brown testified, against the objection of Foster and Swazey, that he made the contract with the plaintiff, for the benefit of McLean & Dowling, Foster & Swazey and himself; and the plaintiff and Brown both testified, also against the objection of Foster and Swazey, that before the making of the contract Brown told the plaintiff that he was buying on the joint account.

There was evidence that " on the day of the contract, Brown drew the draft therein mentioned, on McLean & Dowling, for $300, by the plaintiff's direction, which was paid to the plaintiff, that on July 8, 1867, before the lumber was delivered, or anything further was done under the contract, the plaintiff gave Udolpho Radcliff an order on Brown for $600 ; that Brown, on July 10, 1867, gave Radcliff on account of that order a draft on

McLean & Dowling, payable in ninety days from its date, to Radcliff's order for $550; which draft was accepted by McLean & Dowling, but never paid; and that the same was at the time of the trial outstanding in the hands of Radcliff, or some other person, never having come into the plaintiff's possession."

The plaintiff testified " that he was owing Radcliff at the time when he gave him the order on Brown; that he did not suppose the order would be accepted by Brown; that he did not consider that the order was drawn on account of the merchandise, as there was nothing due to him under the contract when he drew it, and Brown then individually owed him nothing; that it was drawn on Brown in his private capacity, and not as acting for the partnership; that he calculated that if Brown, in answer to his order, gave Radcliff a draft which would be accepted and paid, he would allow Brown the amount when Brown settled for the merchandise in question; that he calculated, if Brown paid Radcliff, he would pay Brown when he got his money for his lumber; that he did not suppose Brown would answer the order, but Brown was a friend of Radcliff, and he thought he might to accommodate him, but hardly expected he would; that he never drew an order on Brown before, and Brown had never lent him any money; and that the contract in question was the only transaction he had with Brown."

Brown testified " that he gave the draft in part payment for the clapboards; that he never paid the plaintiff any money on account of the clapboards; that on May 29, 1867, he drew a draft in favor of the plaintiff on McLean & Dowling, for $300, in part payment of the clapboards, and on July 10, 1867, drew a draft in favor of Radcliff on McLean & Dowling for $550, payable to Radcliff's order in ninety days from its date; that it was given in part payment for the clapboards, and on the written request, dated July 8, 1867, of the plaintiff to himself personally to pay to Radcliff $600 in sixty days from date; and that these two drafts were the only ones he ever gave Getchell in payment for the clapboards."

The above recited evidence in respect to the order of the plaintiff and the draft of $550 was the only evidence in the case in respect thereto.

Getchell *v.* Foster.

. Foster and Swazey requested the judge to rule, " that the first mentioned agreement did not constitute a partnership between Foster & Swazey, McLean & Dowling, and Brown; that if the plaintiff was informed by Brown, before making the contract with him, that Foster & Swazey, McLean & Dowling, and Brown, were partners, and were the persons buying the clapboards of the plaintiff, and the plaintiff notwithstanding made the written contract with Brown, he thereby gave an exclusive credit to Brown, and cannot recover of the other defendants; and that the draft of $550, being outstanding, was to be treated as so much in part payment of the plaintiff's demand."

The judge declined so to rule, and ruled that the defendants were partners; but that if the plaintiff was informed by Brown of the partnership, and then sold the property to Brown individually, trusting him individually, the plaintiff could not recover against the partnership.; that the plaintiff must recover, if at all, on the ground that a contract was made by him with the partnership in the name of Brown; that if Brown was acting as partner in drawing for $550, then the $550 was to be deducted in case the plaintiff should recover; but that, if the jury were satisfied that this had no connection with the other business, it should not be deducted.

The jury returned a verdict for the plaintiff, and did not deduct the $550. Foster and Swazey alleged exceptions.

*J. D. Ball*, for Foster and Swazey.

*R. D. Smith*, for the plaintiff.

AMES, J. The agreement to enter upon " an operation embracing the purchasing and selling of shingles and clapboards " was sufficient to render all the parties to it copartners in relation to third persons, according to all the tests recognized by the authorities. It refers to a joint undertaking; it assigns to the parties interested their several shares in the management of the business; and it provides for an equal participation in all profits and losses. The fact that the purchases were to be made by one of their number, and that he was to give his time to that part of the business without furnishing any part of the capital, would not affect the question of the joint liability of all the associates on

account of the purchases so to be made. As they do not appear to have expressly agreed upon any partnership style or firm name, but intended that Brown should make their purchases, the business of purchasing conducted by him, on the joint account and within the authority confided to him, would be binding on all, even if his agency had not been disclosed to the seller. The facts, however, find that Brown's relation to the matter was fully disclosed before the sale was made, and that the plaintiff understood that the purchase was on the joint account of the defendants and their associates. *Baring* v. *Crafts*, 9 Met. 380. *Pratt* v. *Langdon*, 12 Allen, 544. *Brigham* v. *Clark*, 100 Mass. 430. *Odiorne* v. *Maxcy*, 15 Mass. 39. The testimony of Brown and also of the plaintiff upon this subject does not appear to us to be objectionable as varying a written contract. Its effect was rather to show that the associates used his name in their purchases as one by which all were included and bound, as their firm name for that part of their business, and recognized him as their agent for that purpose.

We think, however, that upon the facts stated the jury should have been instructed that the defendants were entitled to a deduction of the draft of $550 from the plaintiff's claim. It appears that he drew an order upon Brown before he was entitled to do so according to the contract, but with the expectation that, if Brown accepted it, it would be taken into account and allowed for on settlement. It appears also that Brown gave the draft of $550, intending it as a part payment for the merchandise sold by the plaintiff, and that it was such a draft as the plaintiff had by the terms of his contract agreed to receive in payment. The fact that it was delivered to the plaintiff, or applied to his use, before he had a right to call for it, does not affect the question. It was a payment to him according to the terms of the contract, and the defendants, as a matter of law, are entitled to an allowance accordingly. Upon this point the exceptions must be sustained, unless the plaintiff shall decide to correct the verdict by remitting the amount of the draft, and making the proper correction of interest. *Ordered accordingly.*