## Joseph Horne & Company, Appellant, v. R. B. Petty.

*Attachment execution—Partnership.*

An attachment execution will not lie against a partner's interest in an unsettled partnership regardless of the nature of the partnership.

*Evidence—Adverse interest—Party dead.*

To disqualify a witness under clause *e*, section 5 of the statute he must have an interest adverse to that of the deceased; it is the adverse interest, not the adverse testimony of a witness, that disqualifies.

Argued May 10, 1899. Appeal, No. 153, Jan. T., 1899, by plaintiff, from judgment of C. P. Fayette Co., June T., 1898, No. 43, on verdict for defendant on feigned issue. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Feigned issue.

The case was tried before the court without a jury, under the Act of April 22, 1874, P. L. 109.

The facts sufficiently appear by the opinion of MESTREZAT, P. J., as follows:

### FINDINGS OF FACT.

1. In 1895 R. J. Linton, W. E. Frazer, Jr., and W. Y. Parkinson entered into a partnership for the sale of certain coal lands in Fayette county, Pennsylvania. At No. 338, September term, 1896, of the court of common pleas of Allegheny county, No. 1, sitting in equity, Frazer filed a bill against Linton averring a partnership and praying, inter alia, that Linton "be required to render an account showing the sales made of the

coal lands mentioned in the bill to the Johnson Coal Company, and the profits realized by defendant on same, and that defendant be required to pay to " the plaintiff the one half of such profits. Subsequently the bill was amended by joining W. Y. Parkinson and H. W. Strickler with Frazer as plaintiffs. Linton, the defendant, in his answer denied the partnership averred in the bill and also "his liability to pay to plaintiff anything on account of the matters therein contained." The cause was duly proceeded with and said court found and declared that the agreement between said Linton, Frazer and Parkinson constituted a partnership, and that said parties were partners in the sale of said coal lands. The court further found that Frazer and Parkinson were entitled to the one half of the profits arising from the transactions of said partnership, to wit: to the sum of $2,511.85, and on October 26, 1896, decreed that Linton pay the same to Frazer and Parkinson. The decree of the court on appeal by Linton was affirmed by the Supreme Court October 25, 1897.

2. While, as the court in said cause found and decreed, there was a partnership in the sale of said coal between Linton, Frazer and Parkinson, [there was also a partnership between Frazer, Parkinson and H. W. Strickler as to the profits or money received by Frazer and Parkinson in which each of said partners were entitled to the one third. The business of said subpartnership is still unsettled.] [1]

3. At No. 310, September term, 1896, of the court of common pleas of Fayette county, Joseph Horne & Company, by their attorney, filed a præcipe directing an attachment execution to be issued on a judgment held by them against W. E. Frazer, Jr., and H. B. Frye, partners trading as Frazer & Frye, and directed all debts, dividends, deposits, goods and chattels of W. E. Frazer in the hands or possession of R. J. Linton to be attached. This attachment execution was returned served on Linton at 5 o'clock, P. M., August 20, 1836, and nihil as to defendant. The writ of attachment did not follow the directions in the præcipe, but commanded the sheriff to attach the debts, etc., "due to the said W. E. Frazer and H. B. Frye," and to summon R. J. Linton as garnishee.

4. [At the date of the issuing and service of the said attachment execution the partnership accounts of the firm composed

of R. J. Linton, W. E. Frazer, Jr., and W. Y. Parkinson had not been settled or adjusted. They were open and unsettled until the decree of the court in the equity case on October 29, 1896.] [2]

5. On September 10, 1896, W. E. Frazer, Jr., by a writing under his hand and seal, assigned to Robert B. Petty, the defendant in this issue, all his interest in the claim of said company (named in said bill in equity), " being my interest in the partnership transaction set forth in the bill and in any judgment or decree that may be entered in said (equity) case." Notice of this assignment was given to R. L. Linton on the date of its execution, and the assignment was filed in said equity suit in said court on October 29, 1896.

6. By writing under seal, dated October 29, 1896, W. Y. Parkinson assigned all his interest in the claim in the equity suit at No. 338, September term, 1896, of the court of common pleas of Allegheny county, No. 1, in equity, and in the decree entered therein. This assignment was filed among the records of that court in said equity suit the day it was executed.

7. On the petition of R. J. Linton, this court, on March 14, 1898, directed said Petty to become a party to the attachment execution, and directed an issue to be framed with Joseph Horne & Company as plaintiff and said Petty as defendant, to determine the ownership of the one half of the $2,511.85, in the hands of said Linton and awarded by said court in Allegheny county to be paid to Frazer and Parkinson. This is the issue now to be determined. The plaintiff claims that the one half of said sum of $2,511.85 is Frazer's share therein and that it now belongs to them by reason of said attachment execution. The defendant claims Frazer's interest in the fund by virtue of the assignment of September 10, 1896. Parkinson's interest in said sum is not involved in this case.

8. W. E. Frazer, Jr., died February 6, 1898.

### DISCUSSION AND CONCLUSIONS OF LAW.

On the trial of the cause, R. B. Petty, the defendant in this issue, W. Y. Parkinson and H. W. Strickler were called by the defendant to establish the subpartnership between Frazer, Parkinson and Strickler. The plaintiff objected that these witnesses were interested in the result of the issue on trial and

were incompetent by reason of the death of W. E. Frazer, Jr. The objection was overruled and the witnesses were permitted to testify. All parties are competent witnesses save those who come within the specified exceptions. It is claimed that the witnesses here come within the exception in clause *e*, section 5 of the statute. This clause provides: " Nor where any party to a thing or contract in action is dead . . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract or any other person whose interest shall be adverse to the said right of such deceased . . . . party, be a competent witness to any matter occurring before the death of said party." To disqualify a witness he must have an interest adverse to that of deceased. [R. B. Petty's interest is not adverse to the right or interest of W. E. Frazer in the matter in controversy. On the contrary, he stands in Frazer's shoes, and it is equally in the interest of both to enlarge or increase rather than diminish the funds in the hands of Linton. Petty's testimony may tend to diminish the fund, but, if so, it is against his interest as well as the interest of Frazer. It is, however, the adverse interest and not the adverse testimony of a witness that disqualifies him. We think Petty is a competent witness in this proceeding.] [3] " To exclude a witness," says Justice GIBSON, in Wolf v. Carothers, 3 S. & R. 240, " it is necessary that he should have a vested interest not in the question, but in the event of the suit. It must be an interest that the judgment in the cause would operate upon; for if by the event he would neither acquire nor lose a right, nor incur a responsibility which the law recognizes, he is competent. Every other kind of interest goes to his credibility."

H. W. Strickler is not a party to this issue. By his testimony, he claims the one third of the fund awarded to Frazer in the equity proceeding. But it is by no means clear to us that he is interested in the contention here, adverse to Frazer, or that he is concerned at all with the result of our decision in this case. We cannot see how Strickler can " acquire or lose a right " or " incur a responsibility " by any conclusion at which we may arrive in this issue. He is no party to this proceeding,

and his right to the fund in dispute cannot be here judicially determined. As, however, there may be some doubt as to his competency we will exclude his testimony in the consideration of the case.

The one half of the fund awarded to Frazer and Parkinson to which the latter is entitled is not in contention here. It is only the one half claimed by Frazer. [Parkinson, therefore, is not interested in this issue or the results thereof, and is a competent witness.] [4]

As we have found that there was an unsettled partnership existing between Linton, Frazer and Parkinson at the time the plaintiffs' attachment was served on Linton, we deem the subpartnership unimportant to a determination of this issue. The correctness of our ruling, therefore, on the competency of Petty and Parkinson as witnesses, whose testimony establishes the subpartnership, becomes immaterial.

The plaintiff claims the fund in controversy by reason of its attachment. The defendant's claim to the fund rests on the assignment. The plaintiff's attachment was issued under section 35 of the Act of June 16, 1836, Purd. Dig. 835, pl. 46. Under this section of the statute, an attachment execution may be laid " in the case of a debt due to the defendant, of or a deposit of money made by him, or of goods or chattels pawned, pledged or demised, as aforesaid."

We think it is well settled in Pennsylvania that a partner's interest in an unsettled partnership cannot be attached: Ryon v. Wynkoop, 148 Pa. 188. " Debt," within the meaning of the statute, does not extend to the interest of a partner in an unsettled partnership: Knerr v. Hoffman, 65 Pa. 126. In Whigham's Appeal, 63 Pa. 194, Mr. Justice SHARSWOOD, speaking for the Court, says : " Partners have no separate title in any aliquot part of the partnership property. Their interest is an incorporeal, intangible thing—a right to an account, and to their share of the balance after all the partnership debts are paid and all equities between the parties adjusted."

[The plaintiff offered in evidence the entire record in the suit in Allegheny county " for the purpose of showing how the fund in dispute arose . . . . and to show that there was a fund belonging to W. E. Frazer." This record shows, and it is therein judicially determined, that the fund in controversy is Frazer's

share of the profits of the partnership of Linton, Frazer & Parkinson, which partnership was unsettled, and Frazer's share or interest therein unascertained at the date the plaintiff's attachment execution was issued and served. This is conclusive as to the character of the fund in dispute, and determines the right of the plaintiff to issue its writ of attachment.] [5]

The learned counsel for the plaintiff, however, claims that if there is anything in the defendant's position that the transaction between Linton, Frazer and Parkinson was a partnership, it was such only in a single venture or transaction, and that the profits were susceptible of a struck balance. [The evidence of the plaintiff contradicts its claim that the business of the partnership was a single transaction.] [6] The partnership was created for the purpose of selling coal lands and a large number of tracts of coal, held by the partnership under optional agreement of purchase, were sold. The bill in equity was filed for the purpose of compelling Linton to render an account of " the sales made of coal lands." [The partnership was created and existed for the purpose of selling coal lands generally.] [6]

[But conceding that the partnership was for a single venture, it does not follow that the attachment would lie as maintained by the plaintiff. To so hold would be to disregard the reason why an attachment execution will not reach a partner's interest in a partnership.] [7] Mr. Justice AGNEW, sitting at nisi prius, in Alter v. Brooke, 9 Phila. 260, so well and clearly states this reason that we quote his words : " The reason is, not that the sum is unliquidated, though this has been strenuously argued against the attachment. . . . The true reason lies in the nature of the interest, which is not a specific thing, having a distinct and independent existence, but is a mere result, flowing from a comparison of accounts, and may fall on either side, as the balance happens to be. A specific debt or demand may be unliquidated, but nevertheless has its own independent existence, and may be ascertained by computation or by valuation. Not so with the interest of a partner in an unsettled partnership account. It results wholly from a comparison of the debits and credits of the partnership in the first instance, and then a comparison of the accounts between the partners themselves. If the debts of the firm exceed its credits, there will be no balance for division between the partners, and if there be a bal-

ance, whose it is or how much it is, or how much of it, cannot be known till the account between the partners themselves is settled. It is obvious, therefore, that it is the nature of the interest, and not its unliquidated character, which takes it out of the execution attachment law."

It is, therefore, clear that [an attachment execution will not lie against a partner's interest in an unsettled partnership regardless of the nature of the partnership.] [8]

As conclusions of law, we hold:

[1. The attachment laid by the plaintiffs did not extend to or reach the interest of W. E. Frazer, Jr., in the partnership composed of R. J. Linton, W. E. Frazer, Jr., and W. Y. Parkinson, or in the partnership composed of W. E. Frazer, Jr., William Y. Parkinson and H. W. Strickler.

[2. Said attachment does not bind or affect the money awarded by the decree of the court of common pleas of Allegheny county to W. E. Frazer, Jr., to wit: the one half of the $2,511.85, in the hands of R. J. Linton, and that said Linton holds said fund free and clear of any claim or lien thereon by reason of said attachment.

[3. The interest of W. E. Frazer, Jr., in said partnership passed to and became vested in Robert B. Petty by virtue of the assignment of September 10, 1896, and that said Petty is entitled to the one half of said $2,511.85 now in the hands of R. J. Linton.

[4. Judgment should be entered in this issue in favor of R. B. Petty, the defendant.] [9]

[And now, March 6, 1898, we direct the prothonotary to enter judgment in favor of the defendant unless exceptions be filed within thirty days.] [10]

Exceptions having been filed, they were overruled and judgment entered for defendant. [11]   Plaintiff appealed.

*Errors assigned* were (1, 2) findings of fact by the court below, reciting them; (3–9) conclusions of law of the court below, reciting them; (10, 11) the orders of the court, reciting them; (12) admitting testimony of R. B. Petty, H. W. Strickler and W. Y. Parkinson.

*Geo. D. Howell*, for appellant.—There is no statutory prohibi-

tion against attaching a partnership interest.  The courts alone, and not the legislature, have held that a partner's interest in an unsettled partnership, as generally understood, shall not be liable to attachment execution, because, solely, of the difficulty of determining what his interest would be by means of a jury.

If the court be in error in finding that the so-called partnership was for general purposes and in not finding that it was for a single transaction, then we respectfully submit that Frazer's share in the fund was liable to attachment and was bound by Horne's attachment on August 20, 1896, because : (1) Frazer could have sued in assumpsit for it; (2) if he could have so sued in assumpsit for his share, it was attachable, and was a "debt" within the act of 1836.

As to the right to sue in assumpsit for a share in a single partnership transaction, see Van Amringe v. Ellmaker, 4 Pa. 283, Wright v. Cumpsty, 41 Pa. 102, Galbreath v. Moore, 2 Watts, 86, Canfield v. Johnson, 144 Pa. 77, and Kutz v. Dreibelbis, 126 Pa. 339.

If then Linton's indebtedness to Frazer was one for which Frazer could have sued in assumpsit, it is a "debt" which, under the act of 1836, is attachable.  See Knerr v. Hoffman, 65 Pa. 126. It needs not this authority however, to sustain so plain a proposition, founded in good sense and reason. . . . 2 Shinn on Attachment and Garnishment (ed. of 1896), p. 849, sec. 482 (*h*), says : "The nature of a demand which must exist between the debtor and the garnishee is frequently, and with substantial truth, stated to be, that in order to enable a creditor to reach in this summary way of attachment, a demand owing from a third person to his debtor, the demand of his debtor against the contemplated garnishee must be of such a nature that such debtor could maintain an action of debt, or indebitatus assumpsit for the recovery of the demand sought to be subjected." See cases cited.

*Howard L. Robinson,* of *Robinson & McKean,* for appellee.— Unless a person, whether a party to the record or not, has a direct interest in the event of the suit adverse to that of the decedent or his representatives he is not incompetent : Dickson v. McGraw Bros., 151 Pa. 98.

PER CURIAM, May 23, 1899:

By agreement of parties to this feigned issue, trial by jury was waived and the case submitted to the decision of the court below. From its judgment in defendant's favor this appeal was taken by the plaintiff company, who in its specifications of error complains of the learned trial judge's finding of fact, conclusions of law, etc.

Our consideration of the record, with special reference to each of these specifications, has failed to convince us that there is any error therein that would justify us in sustaining either of them. On the contrary, we are all of opinion that there is no substantial error in any of the learned judge's findings of fact, conclusions of law, or in any of his rulings leading up to and including the entry of judgment for the defendant.

The court's action in the premises is sufficiently vindicated in the opinion of its learned president, and on that we affirm the judgment.

Judgment affirmed.