# Dinger *v.* Friedman et al., Appellants.

*Evidence — Witness — Cross-examination — Adverse interest — Partnership—Acts of May 23, 1887, section 7, P. L. 158, and March 30, 1911, P. L. 35.*

1. Under section 7 of the Act of May 23, 1887, P. L. 158, as amended by section 1 of the Act of March 30, 1911, P. L. 35, permitting the cross-examination of any "person whose interest is adverse to the party calling him," the interest of the person called must be involved in the event of the suit in the sense that, by operation of the judgment there entered, either a legal right or liability of the witness will be acquired, lost or materially affected.

2. The "adverse" interest in question must be such as would be promoted by the success of the adversary of the party calling him.

3. Where the superior interest of a witness is with the party calling him, that party will be regarded as accrediting the witness, and cannot put him on the stand for cross-examination.

4. Where the fact that the witness has an adverse interest entitles one to call him for cross-examination, it is the adverse interest and not his adverse testimony which is to be considered.

5. Where an action of assumpsit is brought against three persons as partners, and the writ is not served on one, who was nominally the contracting party, and the partnership is denied by the other two, the defendant not served may not be called by the plaintiff as a witness for cross-examination to prove the partnership, inasmuch as the interest in the result is not adverse.

6. If the plaintiff establishes the partnership, the witness will in all likelihood not be asked to pay for more than one-third of the amount, and if he is, not by plaintiff, but by the other two defendants; and if he is compelled to pay the whole amount, he has contribution against his codefendant, while, on the other hand, if the partnership is not established, the witness will be liable for the whole amount.

7. Under such circumstances the interests of the plaintiff and the witness are more in common than otherwise, for it is to the material advantage of each of them to establish the alleged partnership, and the testimony of the witness might be tinctured accordingly.

8. By calling the witness for the purpose stated, plaintiff also gained an undue advantage, if it appears that, in offering evidence

to contradict him, he was able to introduce several items of proof, which otherwise would have been unavailable to him.

*Evidence—Memorandum of oral statements of witness—Contradiction of witness—Vague admonition by trial judge.*

9. A mere private memorandum of oral statements of a witness, written down by another person, with nothing but the testimony of such person to connect it with the witness, is inadmissible either to contradict the witness, or to prove the truth of the facts therein asserted, although perhaps it may be used to refresh memory.

10. The error in admitting such a paper is not cured by vaguely phrased admonition of the trial judge to the jury not to consider it, made four days after the paper was admitted.

*Evidence—Contradiction of party's own witness—Surprise.*

11. A party who calls a witness cannot subsequently contradict him, unless he pleads surprise or some other exceptional circumstances, to take the case out of the general rule.

*Partnership—Evidence—Continuance of status — Declarations of partners.*

12. A status once established is presumed to continue until the contrary appears. This rule is applicable to the proof of the continuance of a partnership.

13. The fact of a partnership may be proved by declarations of the several partners, though none of them is bound by the other's admissions of which he has no knowledge.

14. Claims against partners are maintainable on written contracts made by any one of them, if it can be proved by proper evidence that they were either entered into or adopted by the alleged partnership; and this rule applies even though proofs may in effect appear to vary or depart from the writing in question by showing parties not named therein are liable thereunder.

*Partnership—Contracts in writing—Seal — Surplusage — Evidence of partnership—Attorney-at-law—Witness.*

15. If an instrument executed by a partner, although under seal, would have been valid without a seal and is within the scope of the partnership business and within the powers belonging to each partner, then the seal may be disregarded as surplusage and the instrument treated as a simple contract.

16. Where a suit is brought against three persons as partners, and it appears that a former suit brought on the same contract against one of the defendants had been discontinued, an attorney for plaintiff may be permitted to testify that plaintiff had consulted him prior to the first suit in reference to bringing the action against the three defendants in the second suit; this for the purpose

of meeting any inference which the jury might draw from the fact that the first suit had been brought against one of the partners only.

Argued October 12, 1923. Appeals, Nos. 133 and 134, Oct. T., 1923, by Henry Friedman and Henry Flaster, respective defendants, from judgment of C. P. Allegheny Co., Oct. T., 1921, No. 1273, on verdict for plaintiff, in case of B. D. Dinger v. Henry Friedman, Henry Flaster and Joseph Arnold, doing business under name of Arnold Drilling Co. and under the name of Joseph Arnold. Before MOSCHZISKER, C. J., FRAZER, WALLING, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit on written contract for services. Before FORD, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $8,678.66. Defendants, Henry Friedman and Henry Flaster, appealed.

*Errors assigned* were various rulings and instructions appearing by the opinion of the Supreme Court, quoting record.

*A. M. Simon,* for appellant.—The entire evidence of plaintiff is insufficient as a matter of law to sustain the contention that Henry Friedman and Henry Flaster were partners with Arnold: Heron v. Phipps, 246 Pa. 294; Edwards v. Tracey, 62 Pa. 374; Walker v. Tupper, 152 Pa. 1; Scull's App., 115 Pa. 141.

The court erred in permitting Joseph Arnold, one of the defendants, who was not served in the case at bar, to be called as for cross-examination: Heron v. Phipps, 246 Pa. 294; Wolle v. Brown, 4 Wharton 364.

*O. K. Eaton,* with him *Walter L. Riggs,* for appellee. —Parol evidence is admissible to prove that an agreement executed by a partner individually in his own name is a partnership contract binding upon the non-

signing partners: Woolsey v. Henke, 125 Wis. 137; 22 C. J. section 1657.

The entire evidence of plaintiff was sufficient as a matter of law to sustain the contention that Henry Friedman and Henry Flaster were partners with Joseph Arnold: Scull's App., 115 Pa. 141; Reed, Crane & Co. v. Kremer & Co., 111 Pa. 482; Welsh v. Speakman, 8 W. & S. 257; Bing v. Schmitt, 226 Pa. 622.

The admission in evidence of the typewritten statement made by Mr. Riggs from a conversation had with Joseph Arnold was proper: Lenhart v. Allen, 32 Pa. 312; Edwards v. Tracy, 62 Pa. 374; Porter v. Wilson, 13 Pa. 641.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 7, 1924:

B. D. Dinger served Henry Friedman and Henry Flaster in a suit to recover for work done under two written contracts made between him and one Joseph Arnold; he obtained a verdict on which judgment was entered, and defendants have appealed.

The first writing in suit states that "B. D. Dinger ......agrees to drill three [oil or gas] wells for Joseph Arnold on the locations and at the places decided upon by the said Joseph Arnold," for a stipulated consideration. The second writing refers to the first and mentions Arnold as "doing business" under the name of "Arnold Drilling Company."

The statement of claim sets forth, and evidence was allowed to prove, that "in January, 1920," the month of the making of the first contract, Arnold, Friedman and Flaster were "copartners doing business under the firm name or style of the Arnold Drilling Company and under the firm name or style of Joseph Arnold......engaged in drilling oil and gas wells"; that Friedman and Flaster were "silent or dormant members of the said partnership"; that the original agreement was an oral one made with Joseph Arnold, "who [at that time] was

acting for and on behalf of his copartners and himself," which oral contract was subsequently reduced to writing; that, "prior to the signing of the written agreement......Arnold represented to plaintiff that Friedman and Flaster were partners with him......but, as they were engaged in the banking business......, they did not wish to be known publicly as being connected with the drilling of said wells," therefore, plaintiff averred, the agreement was made in the name of Arnold alone, though, after execution, "it was submitted to Henry Friedman and Henry Flaster and approved and ratified by them." As to the second written agreement, made in October, 1920, plaintiff alleged and undertook to show that, although the document names Arnold alone, yet when it was entered into, the latter at that time also acted for himself and partners, and that payments on account of "money due......under said contracts were made by [these alleged partners] Henry Friedman and Henry Flaster." Finally, plaintiff claimed and offered evidence to prove that, after the payments on account, $10,385 of indebtedness remained unsettled, consisting of the value of certain tools, which were to come to Dinger on the completion of the work contracted for, and money compensations not paid; for all of which he sued.

Both the admission of the evidence offered in support of the above-stated averments and the manner in which plaintiff was allowed to submit his proofs are complained of in several assignments of error, some of them filed by one defendant and some by the other, under their respective appeals; but all were argued before us as though pertaining to a single appeal, and they will be so disposed of in this opinion.

Plaintiff originally brought action against Joseph Arnold alone, the party with whom he had made the written agreements in controversy. In that proceeding Dinger did not claim the contracts were executed by Arnold for a partnership, or that any one other than

Arnold was liable thereon. The original suit was discontinued, and plaintiff later instituted the present action against Arnold, Friedman and Flaster; but, for some unexplained reason, he failed to serve the first-named defendant. At trial, he called Arnold for cross-examination, claiming he was a witness with an adverse interest. The cross-examination proceeded and testimony was thus elicited under objection and exceptions from defendants, who now assign as error the rulings of the court in permitting Arnold to be cross-examined and in subsequently allowing the witness to be contradicted by others, in so far as his testimony failed to support plaintiff's case.

The first question is, Did the witness called for cross-examination have an interest on which the judgment in the case would have an operative effect? For that is what the statute, about to be considered, contemplates by the word "interest": Dickson v. McGraw, 151 Pa. 98, 100; Dillon's Est., 269 Pa. 234, 240. The next question is, If the witness had such an interest, was it adverse to the party calling him, within the meaning of the statute? We shall show that the first of these questions must be answered in the affirmative, and the second in the negative.

Under section 7 of the Act of May 23, 1887, P. L. 158, 160, as amended by section 1 of the Act of March 30, 1911, P. L. 35, 36, permitting the cross-examination of any "person whose interest is adverse to the party calling him," the interest of the person called must be involved in the event of the suit in the sense that, by operation of the judgment there entered, either a legal right or liability of the witness will be acquired, lost, or materially affected; and, to come within the classification of "adverse," the interest in question must be such as would be promoted by the success of the adversary of the party calling him: Cohen v. Salsberg, 17 Pa. Superior Ct. 286, 288.

In determining the character of the interest of a person called to testify, the substantialities of the situation, not mere technical reasoning, control: Taylor v. Henderson, 17 S. & R. 453, 456, 457. Where the substantialities of the situation show that the interest of the witness would be promoted more by the success of the party calling him than by that of the other side, the adverseness contemplated by the statute is lacking; for a person who will be affected in a material sense by the success of either party to a suit is considered in law as favoring the side on which his personal interest preponderates: Guldin's Admrs. v. Guldin's Admr., 97 Pa. 411, 414; Miller v. Hale, Dud. (Ga.) 119; and opinion of Lord Mansfield in Brown v. Brown, 4 Taunt. 752, a case with aspects similar to those of the one before us.

Where the superior interest of a witness is with the party calling him, that party will be regarded as accrediting the witness, and cannot put him on the stand for cross-examination; though where one called to testify is a true "party to the record," or comes properly within any of the categories specified in section 1 of the Act of 1911, supra, down to (but not including) where it mentions a person "with an adverse interest," he can be cross-examined by the litigant calling him, without regard to the nature of his interest, for the statute so ordains. Here, however, the claim of a right to cross-examine was made to rest solely on the assertion that the witness had an adverse interest; therefore, it was the duty of the court to determine, as a matter of fact, whether the substantial interest of the witness would be most promoted by the success or failure of the party calling him (see Semple v. Callery, 184 Pa. 95, 101, 102; Guldin's Admrs. v. Guldin's Admr., supra), and if, after considering the issue involved and the actual effect of the result of the trial on the material interests of the person called, it appeared that the witness would gain most by the success of the party calling him, he cannot be classed as adverse, within the meaning of the act.

It is "adverse interest and not adverse testimony that disqualifies a witness" where such an interest is made a statutory bar (Horne & Co. v. Petty, 192 Pa. 32, 35, 40; Edmundson's Est., 259 Pa. 429, 437); and, similarly, where the fact that a witness has an adverse interest entitles one to call him for cross-examination, it is that adverse interest and not his adverse testimony which is to be considered.

When the above rules are applied to the present situation and the interest of the witness Arnold is measured thereby, we see that, even though not served as a defendant in this case, he has an ultimate, either joint or several, liability to plaintiff, if the latter proves the contractual defaults alleged by him; and it may be said, incidentally, neither such defaults nor the fact that losses ensued therefrom seem to be denied by any of those here concerned. At first blush, this contractual liability of Arnold to the plaintiff makes the situation look as though the former should be classed as a witness with an adverse interest, but on further consideration we realize that, should plaintiff (who is the party calling the witness) win the verdict on the main issue here involved,—namely, the fact of the existence of a partnership between Arnold and the two defendants,—Arnold, if ever obliged to pay, will in all likelihood be asked for no more than one-third of the amount recovered, and that demand (if made at all) will not be by the present plaintiff but by one or both of the defendants, who will be fixed through such a verdict as partners of the witness, entitled to contribution from him; or, in the event of a verdict against defendants and their failure to pay, should Arnold, as one of the alleged firm, subsequently be compelled to pay in full, he would be entitled to recoup himself by contributions from his partners. On the other hand, if defendants win, thereby establishing the fact of the nonexistence of the alleged partnership, the witness alone will be liable to plaintiff, and, in all probability, eventually will be asked to pay the entire

damages, as the only one obligated under the contract in controversy.

The fact that the success of plaintiff will have such a material effect on the liability of Arnold, and that the latter, by his testimony, may relieve himself from a considerable burden of debt, transferring its payment to the defendants (Miller v. Hale and Brown v. Brown, supra), gives the witness a measurable interest in the event of the suit (Hill v. Frazier, 22 Pa. 320, 323) ; and, when measured, it is plain his superior interest is not adverse to plaintiff (the party calling him) ; on the contrary, their interests so far as involved in the present case are more in common than otherwise, for it is to the material advantage of each of them to establish the alleged partnership, and the testimony of the witness might be tinctured accordingly; hence it was error to permit the cross-examination of Joseph Arnold by plaintiff, at the trial under review.    Moreover, by calling this witness for such a purpose, and then offering evidence to contradict him, several items of proof were introduced which otherwise would have been unavailable to plaintiff, and he thus gained an undue advantage over his opponents. For the reasons given, the 17th assignment will have to be sustained.

This opinion might end here, but lest certain other erroneous rulings on evidence, made at the trial under review and raised by appellants' assignments, recur in the new trial which we shall be obliged to order, it seems meet to take this occasion to mention them; although, if any one of these rulings were the sole error in the case, we might not consider it material enough to base a reversal thereon.

When called as on cross-examination, Arnold asserted that he and defendants were not partners in the Arnold Drilling Co., but (in the same examination) he gave some testimony of facts indicating such a partnership may have existed between them.    Later on, Dinger offered in evidence an unsigned typewritten statement

of things alleged to have been said by Arnold in the course of a conversation with one of plaintiff's attorneys, who testified that, at the time of the interview, he had reduced Arnold's words to writing in his presence and the latter then and there orally approved them. This writing contained statements of the existence of the partnership in question and of other facts contended for by plaintiff, who introduced the paper both to discredit Arnold's denial of the partnership and expressly to prove the truth of the other particular facts asserted therein, or, in the words of the offer, to show "that the other things ['set forth in the paper'] were said and done." In charging the jury, the trial judge instructed to the effect that the declarations of Arnold, claimed as being contained in this exhibit, should not be considered in determining whether defendants were members of the alleged firm; yet the judge had improperly admitted the writing, and since his vaguely phrased admonition to disregard it as original evidence was not made until four days later, this must have been, at best, of doubtful curative value: Heron v. Phipps, 246 Pa. 294, 300. Again, the treating of this exhibit as in itself constituting prior contradictory evidence affecting the credibility of the witness, was clearly error; it was a mere private memorandum of oral statements said to have been made by Arnold, with nothing but the testimony of the witness,—who wrote the paper and was plaintiff's counsel,—to identify it with the alleged speaker. Such a document might perhaps be used to refresh memory (Hottle v. Weaver, 206 Pa. 87, 89), but it could not be introduced as original evidence either circumstantially, as affecting credibility, or testimonially, to prove the truth of facts therein asserted: Franklin Fire Insurance Co. v. Updegraff, 43 Pa. 350, 360. The evidence complained of was wrongly admitted, and the 7th assignment, which covers it, must be sustained.

The 8th assignment goes to the admission of what purports to be a written agreement, signed, in the ab-

sence of Friedman, by Arnold alone and, if proper evidence, tending to show that defendant Friedman was his partner in the Arnold Drilling Co.  The trial court permitted plaintiff to introduce this instrument to discredit Arnold's denial of the partnership.  According to the correct rule, whereby we have adjudged Arnold not to be possessed of an adverse interest, he, for purposes of the present review, must be regarded as though one of appellee's own witnesses; and, as such, ordinarily, his testimony could not be impeached by the party calling him unless surprise, or some other exceptional circumstance were shown (Fisher v. Hart, 149 Pa. 232, 235) to take the case out of the general rule: McNerney v. Reading, 150 Pa. 611, 615.  Plaintiff did not plead surprise nor disclose any ground, other than the alleged adverse interest of the witness he sought to contradict, on which such discrediting evidence might properly be received.  This particular item of proof had been refused when previously offered by plaintiff, before the cross-examination of Arnold, and, as presented, its subsequent admission was error.

The few remaining assignments lack merit, as we shall briefly point out.

Assignment 9 complains of the receipt of testimony from Dinger concerning a conversation between him and Arnold, held immediately prior to the date of the written contract, in the absence of the two defendants.  The testimony was offered as tending to show the existence of the alleged partnership at that time, and it was properly admissible for such purpose: Edwards v. Tracy, 62 Pa. 374, 378; Reed, Crane & Co. v. Kremer & Co., 111 Pa. 482, 486.  A status once established is presumed to continue until the contrary appears (Oller v. Bonebrake, 65 Pa. 338, 344; Fuller's Est., 250 Pa. 78; 22 C. J. 86; see also McConville v. Ingham, 268 Pa. 507, 518); but, aside from that presumption, declarations tending to show the existence of the alleged partnership after the above-mentioned date also were offered.  As-

signment 10 complains of the admission of testimony of this kind, given by a third party, as to a conversation held between him and Arnold, in the absence of defendants, subsequent to the date of the first-written contract, in which Arnold said he was a partner of the two defendants. This evidence was properly received (Porter v. Wilson, 13 Pa. 640, 649; Edwards v. Tracy, supra), but, as explained by the trial judge in his charge, its effect as proof, if credited, was limited to showing that Arnold declared the existence of the alleged firm and that he was a member. The fact of a partnership may be proved by declarations of the several partners, though none of them is bound by the other's admissions of which he has no knowledge (Appeal of Scull, 115 Pa. 141, 150; Daugherty v. Heckard, 189 Ill. 239, 245, 59 N. E. 569); and the present jury were so informed.

Since the contracts in suit are written ones between plaintiff and Arnold, without mention of Friedman or Flaster, there being no allegation or offer to show that provision for liability on their part was left out of the writings by fraud, accident or mistake, and there being no averment or proof of a contemporaneous parol agreement, fixing them with liability, on the faith of which the contracts were made, appellants contend, under several assignments of error, that evidence tending to show such liability ought not to have been admitted, and all proofs received along that line should have been stricken out on their motions so to do. With these contentions we cannot agree, for it has long been settled that claims against partners are maintainable on written contracts made by any one of them, if it can be proved by proper evidence that they were either entered into for or adopted by the alleged partnership (Graeff v. Hitchman, 5 Watts 454, 455; Kramer v. Dinsmore, 152 Pa. 264, 272); and this rule applies even though such proofs may in effect appear to vary or depart from the writings in question by showing parties not named therein to be liable thereunder: Hill v. Voorhies, 22 Pa. 68, 73;

Thodes v. Terheyden, 272 Pa. 397, 400, 401. The modern view is that "where a written instrument bears the name of but one person, presumably it is the undertaking of that person [alone]; but it is competent to establish by general proof that the contract is that of the partnership, and that the firm entered into the contract in the name and seal of the individual": Daugherty v. Heckard, 189 Ill. 239, 245, 59 N. E. 569; Getchell v. Foster, 106 Mass. 42, 47; Woolsey v. Henke, 125 Wis. 134, 103 N. W. 267.

The fact that the writings here involved are sealed instruments is of no significance so far as the issues in this case are concerned, for "if an instrument executed by a partner, although under seal, would have been valid without a seal and is within the scope of the partnership business and within the powers belonging to each partner, then the seal may be discharged as surplusage and the instrument treated as a simple contract": 20 R. C. L. 897, citing Dubois's App., 38 Pa. 231, 236; see also, Woolsey v. Henke, supra.

Complaint is made under assignment 15 that the trial judge erred in allowing certain testimony as to the purchase price of the tools, the value of which was claimed by plaintiff; but an examination of the stenographer's notes, printed in the record, shows that the evidence objected to was not in fact admitted.

Assignment 16 calls attention to a ruling which permitted one of plaintiff's attorneys to testify that, prior to the first action, before mentioned, Dinger came to him, the witness, "for the purpose of entering suit against Mr. Friedman, Mr. Flaster and Mr. Arnold." (Further examination, as to why the attorney had not in fact so brought the original suit, was cut short by an objection from defendants.) Before the admission of this testimony, Dinger, the plaintiff, had been cross-examined as to the first suit instituted by him, which was against Arnold alone; and, in that connection, defendants had introduced the statement and amended

statement of claim there filed.   Under the circumstances, we think the evidence now objected to was admissible to offset or meet any inference which the jury might be urged to draw (from the fact of this prior suit being against Arnold alone) that there was no partnership between Arnold and the two defendants named in the present action.   In addition, it appears from the record that the testimony in question (which was offered during plaintiff's rebuttal) was merely corroborative of an answer made by Dinger to a question put by his own counsel (after the cross-examination above referred to), evidently for the purpose of clearing away the possible inference just mentioned.   On the whole, we see no error in this assignment.

Each defendant asked binding instruction in his favor and subsequently moved for judgment n. o. v.; the refusal of these prayers and motions are assigned as error.   This court cannot say now whether or not, when properly presented, the evidence will be insufficient to establish the alleged partnership, so we conclude the ends of justice will be best served by a new trial.

If the case is tried again, since the existence of an alleged partnership is the main issue, it might be well for the examining attorneys to bring out just what the various witnesses understand, or mean to convey, by the use of the word "partner," and also whether, when employing this word as used by others, they are repeating the precise language of the persons whose utterances they are attempting to describe, or are putting their own construction on the words of such other persons. For instance, plaintiff, on direct examination, when relating the circumstances of his original meeting with Flaster, said that Arnold had introduced him, Dinger, to Flaster as his, Arnold's, partner, and, a few moments later, the witness testified Arnold also stated at this meeting that Flaster was his partner.   Then Arnold himself, when on the stand, said he considered Friedman as his partner in another company, which it appears was

a corporation wherein they both were stockholders. With this careless use of the word "partner" running through the testimony, it is difficult to tell what significance should be attached to parts of it particularly relied on to warrant inferences from which it may be concluded there was a partnership such as contended for by plaintiff.

The assignments before indicated are sustained, and the judgment is reversed with a venire facias de novo.