Jordan, Appellant, *v.* Clearfield County.

Argued October 26, 1932. Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Clarence R. Kramer,* for appellant, cited: Lenhart v. Wright, 286 Pa. 351; May v. County of Westmoreland, 98 Pa. Superior Ct. 488; Penn Builders Inc. v. Blair County, 302 Pa. 300; Walker v. Erie County, 103 Pa. Superior Ct. 250.

*A. M. Liveright,* and with him *Frank G. Smith,* for appellee.

OPINION BY KELLER, J., January 25, 1933:

The Secretary of Highways, acting under the authority of Section 8 of the Sproul Act (May 31, 1911, P. L. 468) relocated a portion of state highway route 276 in Bigler Township, Clearfield County, by a divergence from the old route, and in doing so took and appropriated some of the plaintiff's ground. A view was had to assess the damages which he suffered by such taking, pursuant to Section 16 of that act as amended. He appealed from the award of the viewers to the court of common pleas and now appeals to this court from the judgment of $600 in his favor.

The plan of the proposed change of road, approved by the Governor, which is on file as a public record in the State Highway Department, showed a taking or appropriation of fifty feet in width through plaintiff's land, being the required width of the road. The actual width of the concrete road bed was only eighteen feet, but gutters, banks, slopes, etc., necessitated the taking of a greater width and the plan showed an appropriation of a strip fifty feet wide, for which the

plaintiff is entitled to damages whether wholly used at this time or not: May v. Westmoreland County, 98 Pa. Superior Ct. 488, 492. The plan also showed, on either side of the required width of fifty feet, a line marked "ultimate width", which was fifteen feet beyond the "required width", making the "ultimate width" of the road eighty feet. If the road were extended to the "ultimate width" marked in the plan it would take away a considerable part of plaintiff's house; whereas if only the "required width" was appropriated it would take only a small corner of the front porch. On the trial the plaintiff contended that he was entitled to damages for a taking or appropriation of eighty feet; that the State could subsequently widen the road for the additional thirty feet without any further damages being paid to him. The court below ruled that under the plan only fifty feet were taken or appropriated; that the lines marked "ultimate width" did not fix the present appropriation but were only indicative of an abortive attempt to fix the ultimate width of the highway for future construction, as provided by the amendment of April 6, 1921, P. L. 107, to Section 8 of the Sproul Act, which was unavailing for any purpose; that it did not amount to a present taking of the width of eighty feet, for the plan, by its details, clearly showed a relocation limited to fifty feet, which fixed the appropriation of land for which the county was liable; and it did not legally fix the ultimate width of the road for future construction, with its attendant inhibition of the erection of buildings upon it, for it had not been acknowledged and recorded in Clearfield County, as prescribed by the Act of 1921. We agree with the court below. The present taking and appropriation is of a strip of land fifty feet wide. If and when the Secretary of Highways, proceeding under the first paragraph of Section 8 of the Sproul Act as now amended, widens the road

beyond the fifty feet now taken and appropriated, the plaintiff will be entitled to damages for such additional taking and appropriation: In the Matter of Appointment of Viewers, State Highway Route 86, 103 Pa. Superior Ct. 212, 216, 158 Atl. 296. The lines marked "ultimate width" may be wholly disregarded. Until a plan fixing such "ultimate width" for future construction is acknowledged and recorded in Clearfield County as provided by the Act of 1921, supra, as amended by the act of June 26, 1931, P. L. 1388, it is of no effect whatever. It follows that the court below committed no error in limiting the evidence as to damages to the effect on the value of the property of the taking and appropriation of the strip fifty feet wide. The evidence of the engineer, objected to in the second assignment of error, was not contradictory of the plan but only explanatory of it. The fact that the plan may have some *writing* on it outside the fifty foot strip, does not amount to a taking outside that strip, where it is clear that the writing refers to some point or improvement within the strip. The space may be too small to permit the notation within it of all the items shown, and such notation may be placed on the plan outside the strip appropriated if it is clear that the improvement itself will be placed within it. It is only a matter of convenience to enable the engineer to read it more easily and does not affect the actual taking. The first four assignments of error are concerned with the foregoing matters and are overruled.

The next seven assignments relate to the court's rulings on evidence. The court did not exclude the evidence of the plaintiff. Assignments of error are not fair to the court below, nor to this court, which give only partial or garbled excerpts of the evidence involved. The court below did refuse to admit the evidence of the plaintiff as long as his estimate of the value of his property was based not on its fair market

value but on what he had "in" it. But while refusing to admit his evidence at that time, the court particularly qualified the rejection by limiting it to "the present time. You might call him back later." He was called back later and was asked if he could tell the fair market value of his property before the taking, to which he replied "It was $6,000." Counsel for defendant objected and asked that the answer be stricken from the record. The court then said: "You were asked whether you knew the fair market value of that property before the road was put in or not." Counsel for plaintiff then said, "We will withdraw the witness." The answer was not stricken from the record, but the witness was not recalled. Plaintiff has no ground for complaint on this score.

Frosberg, a witness called by plaintiff as to damages, testified on direct examination that he had not kept in touch with real estate transfers in that vicinity, that he knew of no such transfers within three or four years before the road went through, that he was not familiar with what transfers did take place, and that he "couldn't say" what property in that neighborhood was "held for"; although all this was omitted from the assignment of error. He was clearly incompetent. So was Mike Ranish, in the offer of whose testimony it was stated that "he doesn't know of any transfers in that vicinity and could not place a market value [on the property] before or after the taking."

The plaintiff offered to show by Frank C. Kuhn, a contractor, who was not called to testify as to the market value of plaintiff's property before and after the taking, what it would cost to move the house and barn back and build a retaining wall—some of the plaintiff's witnesses as to values having testified that in making their estimates they had calculated on moving the buildings back the same distance from the new road that they were from the old. The measure of

damages was the difference in market value before and after the taking, and while the General County Law of 1929, P. L. 1278, which was enacted after the decision of the Supreme Court in McSorley v. Avalon Boro School Dist., 291 Pa. 252 (1927), 139 Atl. 848, does authorize duly qualified witnesses as to value in proceedings arising from the exercise of the right of eminent domain "to state in detail and costs all of the elements of benefit or damage which they have taken into consideration in arriving at their opinion" (sec. 527, p. 1354), it does not authorize persons who are not witnesses as to value to testify as to the cost and expenses of making certain changes and improvements the necessity for which is not admitted, but strenuously disputed. The appropriation of a strip fifty feet wide did not necessitate the moving back of the house. The barn was moved by the county. Any substantial inconvenience, affecting the value of the property, resulting from the taking and appropriation of a strip of land fifty feet wide, should be considered in determining the value of the property after the taking, but the county could not be required to move back the house and barn so that they were the same distance from the new road that they were from the old one, or pay the cost and expenses for such moving. This outlay might easily exceed the actual damage done to the property by the taking, and even be greater than the value of the property itself. The law has fixed the measure of damages in eminent domain proceedings, and while it now permits one, who has testified to the value before and after the taking, to state in detail the elements, and their cost, which he took into consideration in arriving at his estimate, it does not receive them as specific items of damage to be separately considered by the jury in passing upon the damages to be awarded: Greenfield v. Phila., 282 Pa. 344, 356, 127 Atl. 768. The defendant made no

objection to the offer as respects the retaining wall, but the plaintiff did not elect to proceed as to that alone.

The eleventh assignment of error is to the refusal of the court below to permit the plaintiff to call one of the county commissioners as for cross-examination and to put to him certain questions embraced in the offer. A county commissioner does not *literally* come within the provisions of the Act of March 30, 1911, P. L. 35, which amends section 7 of the Act of May 23, 1887, P. L. 158, and authorizes the calling as if under cross-examination of witnesses who are adversely interested; for he is an elected county official, who is not a party to the record and has no personal interest adverse to the plaintiff, (Dinger v. Friedman, 279 Pa. 8, 123 Atl. 641), and is not a director or other officer of a corporation, joint stock or other association, which is a party to the record. The county had no part in adopting and laying out the relocated road, nor had the commissioners any function in the matter beyond endeavoring to agree with the landowner as to the damages to be paid by the county. But irrespective of this, the offer proposed to ask the witness if he had not signed and sworn to the affidavit of defense which alleged that no damages had been sustained by the plaintiff, but that his property had rather been benefited, to be followed by asking him whether he had not admitted the day before to plaintiff's son that the property had in fact been damaged. As the affidavit of defense was not before the jury it was not competent to introduce it into evidence in effect, and then attempt by the witness to contradict it. A county commissioner has no authority to prejudice the county's rights by loose declarations not made in connection with the act complained of nor occurring in the performance of an official duty: Knights of Pythias v. Leadbeter, 2 Pa. Superior Ct. 461, 473.

The twelfth assignment complains of the court's refusal to grant a new trial because of the inadequacy of the verdict. This is a matter peculiarly within the discretion of the court below, and will not be reviewed by us except for a clear case of abuse of that discretion. While a number of witnesses for the plaintiff testified to a much greater amount of damages than the jury allowed, their testimony depended, in part, on elements that did not necessarily enter into the verdict, and some of the testimony was so preposterous as to discredit not only the evidence of those who gave it but also to affect that of others who arrived at the same conclusion. The verdict of the jury was for the same amount awarded by the jury of view. There was evidence to support it. The court below did not think that it was capriciously low or it would have awarded a new trial. We are not convinced that there was any abuse of discretion in refusing it.

The assignments of error are all overruled and the judgment is affirmed.