# Suckling *v.* Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, Appellant.

504

Argued April 26, 1967. Before Bell, C. J., Musmanno, Jones, Eagen, O'Brien and Roberts, JJ.

*Marion D. Patterson, Jr.*, with him *Patterson and Evey*, for appellant.

*R. C. Jubelirer*, with him *Bernard Jubelirer* and *James L. Jubelirer*, for appellee.

OPINION BY MR. JUSTICE JONES, September 26, 1967:

On December 6, 1957, John H. Reik was struck and killed by a motor vehicle owned by Anna H. McKirdy[1] and operated by Thomas J. Collins [Collins]. The McKirdy motor vehicle was insured under an automobile liability policy issued by the Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company [insurance carrier].

Ruth Suckling, Reik's personal representative, instituted a *trespass* action in the Court of Common Pleas of Blair County against Mrs. McKirdy's personal representative and Collins. At trial, a compulsory nonsuit was entered in favor of the McKirdy Estate and the jury returned a $30,000 verdict against Collins.

Thereafter, Reik's personal representative, instituted an *assumpsit* action in the Court of Common Pleas of Blair County against the insurance carrier upon the theory that the coverage of the McKirdy insurance policy extended to Collins under the policy's "omnibus clause". After a trial, the jury rendered a verdict against the insurance carrier. A motion for a new trial having been refused, judgment was entered on the verdict and from that judgment the instant appeal was taken.

The sole issue at the *assumpsit* trial was whether or not Collins, operator of the McKirdy motor vehicle at the time of the accident, was operating such motor vehicle with the permission of Anna J. McKirdy; if he was, the policy covered Collins. During the trial, the insurance carrier sought to call Collins *as on cross-examination* upon the theory that Collins had an inter-

---

[1] Mrs. McKirdy died prior to suit.

est adverse to it. The trial court sustained an objection to Collins being called as on cross-examination and the propriety of that ruling is the sole reason assigned for the grant of a new trial.

Two questions now arise: (1) was Collins' interest adverse to the insurance carrier, which called him as on cross-examination, within the provisions of the Act of May 23, 1887, P. L. 158, §7, as amended by the Act of March 30, 1911, P. L. 35, §1, 28 P.S. §381; (2) if Collins' interest was adverse and the trial court erred in not permitting him to be called as on cross-examination, was such error so prejudicial as to mandate the grant of a new trial?

The Act of 1887, supra, provides, inter alia: "In any civil proceeding . . . any other person whose interest is adverse to the party calling him as a witness, may be compelled by the adverse party to testify as if under cross-examination, subject to the rules of evidence applicable to witnesses under cross-examination, and the adverse party calling such witnesses shall not be concluded by his testimony. . . ."

Although Collins was not a party of record, it is contended that he had a vital interest in the assumpsit action because, if a judgment in the assumpsit action was rendered against the insurance carrier, he would be absolved from payment of the $30,000 judgment rendered against him in the trespass action.

This direct suit against the insurance carrier is authorized by the provisions of the policy drawn in compliance with the provisions of the Act of May 24, 1933, P. L. 987, §1, 40 P.S. §117 and under both the policy and statute, suit had to be predicated upon the theory that Collins, although not the "named insured", was an "insured" under the policy and that he was an insolvent "insured".[2]

___

[2] An examination of the Act of 1933, supra, would indicate that, as a prerequisite to the action, there must be an "execution

Our inquiry is whether the interest of Collins was "adverse" to the insurance carrier within the intent of the Act of 1887, supra, as amended by the Act of 1911, supra? In determining this question we look to our case law defining the "adverse interest" of a witness and the applicability of such case law to the factual situation herein presented. In so doing we bear in mind that it is the *interest,* not simply the *testimony,* of the witness which must be "adverse": *Hendrickson Estate,* 388 Pa. 39, 45, 130 A. 2d 143 (1957); *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272, 280, 281, 138 A. 2d 85 (1957); *Gelb Estate,* 425 Pa. 117, 121, 228 A. 2d 367 (1967).

In *Dillon's Estate,* 269 Pa. 234, 240, 111 A. 919 (1920) we approved a test to determine the existence of an "adverse interest" set forth in *Braine v. Spalding,* 52 Pa. 247, 248, 249 (1866): "The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent: [citing an authority]." In *Dinger v. Friedman,* 279 Pa. 8, 13, 14, 123 A. 641 (1924), interpreting §7 of the Act of 1887, as amended, we said: ". . . the interest of the person called must be involved in the event of the suit in the sense that, by operation of the judgment there entered, either a legal right or liability of the witness will be acquired, lost or materially affected; and, to come within the classification of 'adverse', the interest in question must be such as would be promoted by the success of the adversary of the party calling him: [citing an author-

issued against the insured" which "is returned unsatisfied". However, since this question is not raised, we need not consider it even though the record is silent on whether an execution was issued against Collins and returned unsatisfied.

ity]. In determining the character of the interest of a person called to testify, the substantialities of the situation, not mere technical reasoning, control: [citing an authority]. Where the substantialities of the situation show that the interest of the witness would be promoted more by the success of the party calling him than by that of the other side, the adverseness contemplated by the statute is lacking; for a person who will be affected in a material sense by the success of either party to a suit is considered in law as favoring the side on which his personal interest preponderates: [citing authorities]."

Many years ago, Mr. Justice (later Chief Justice) GIBSON in *Wolf v. Carothers,* 3 S. & R. 240, 242 (1817), said: "To exclude a witness, it is necessary that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility." Mr. Justice (later Chief Justice) STERN somewhat narrowed the definition of "adverse interest" in *Billow v. Billow,* 360 Pa. 343, 347, 61 A. 2d 817 (1948), when he stated: "Moreover, the adverse interest upon which disqualification depends must be *in the immediate result of the particular suit and not in its effect on other possible actions or circumstances;* remote considerations, such as a possible right of indemnity or contribution under which a witness might have an adverse interest, are not to be considered if his interest is not adverse so far as the suit is concerned in which his testimony is given: [citing authorities]." (Emphasis added).

In scanning this record it seems evident that Collins is insolvent and financially unable to pay the judgment rendered against him in the trespass action.

Whether in the future he would ever be able to pay such judgment is purely speculative; however, we cannot project from his present condition of insolvency a continuance into the future of such insolvency. Regardless of his present condition of insolvency, we must face the fact that the unpaid judgment will be an obstacle in his path toward any possible future solvency and will affect him in various ways, perhaps precluding his securing a license to operate a motor vehicle and deterring him from securing a remunerative livelihood. It appears to us clear that, if this judgment were to be paid by the insurance carrier, Collins would have a vital interest in that result and to that extent certainly his interest would be "adverse" to that of the insurance carrier. As we read our case law we cannot find such "adverse interest" to be remote or contingent; common sense teaches us that Collins would be greatly interested in unloading the burden of this judgment from himself and placing it on the insurance carrier. In our view, Collins' interest was "adverse" to the insurance carrier and the latter should have been permitted to call him as on cross-examination; in not permitting the insurance carrier to do so, the court below erred.[3]

The primary benefit to the insurance carrier of calling Collins as on cross-examination would have been that it would not have been concluded by his testimony and his testimony would have been subject to contradiction by other witnesses. However, under the instant record, Collins was the *sole* witness on the basic issue

---

[3] Cf. *Shane v. Commercial Casualty Ins. Co.*, (E.D. Pa.), 48 F. Supp. 151 (1942), aff'd 132 F. 2d 544 (1942), where, in an attachment execution proceeding against an insurance carrier, the driver of the insured automobile against whom the injured person had secured a judgment was held to have an interest adverse to the injured person entitling him to call the driver as on cross-examination.

before the jury: therefore, even had he been called as on cross-examination, the insurance carrier would have been bound by his testimony. See: *Guida v. Giller,* 406 Pa. 111, 114, 176 A. 2d 903 (1962); *Rogan Estate,* 404 Pa. 205, 171 A. 2d 177 (1961). The insurance carrier contends that, because Collins was not called as on cross-examination, it was prejudiced because (a) it could not "lead" the witness in its examination (See: *Rogan Estate,* supra, pp. 214, 215) and (b) it was deprived of the tactical advantage of "pointing out to the jury that the witness had an adverse interest". Such contentions lack substantial merit. Collins did have an "adverse interest" and the trial court did err in refusing the insurance carrier the opportunity to call him as on cross-examination; however, the instant record does not demonstrate any such prejudice arising from this error as justifies the grant of a new trial.

Judgment affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I believe (a) that Collins had an adverse interest, and (b) that the lower Court committed an error in refusing to permit defendant to call Collins as an adverse witness, and (c) that under all the facts, it was such a prejudicial error as to require the grant of a new trial.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In my view, the trial court's failure to permit the insurance company to call Collins as on cross-examination constitutes reversible error. Although the majority recognizes that the trial judge's ruling was erroneous, it somehow concludes that the insurance company was not thereby prejudiced. Not only can I find

no case law whatsoever to indicate that a separate, specific finding of prejudice need be shown to grant a new trial in a case such as this (nor are any cases so holding cited by the majority or by the appellee in its brief), but furthermore, even assuming arguendo that specific prejudice need be shown, I fail to see how the facts of this case do not *amply* demonstrate its presence.

The case involves but a single issue, and turns on the testimony of a single witness. The jury was asked to decide whether Collins operated Mrs. McKirdy's car with her permission at the time of the accident. Since a finding of permission effectively absolves Collins of liability for the accident, quite naturally Collins was only too pleased to testify that he drove the car with Mrs. McKirdy's blessings. This fact, when coupled with the trial judge's refusal to allow the insurance company to call Collins as on cross, resulted in a trial record which all but mocks the adversary system.

The insurance company could ask Collins only simple, direct questions, since technically he was its witness. Of course, Collins answered all of them in a way most damaging to the appellant's case. Then, when Collins was "cross" examined by the plaintiff-appellee, he gladly allowed his testimony to be shaped by counsel's leading questions. With no opportunity for appellant to impeach the credibility of Collins, it is no wonder that the jury found for the plaintiff.

The majority opinion actually grounds its finding of no prejudice upon the fact that Collins was the *only* witness. If anything, this completely vitiates such a conclusion. Admittedly, Collins was the sole source from which either party could elicit the factual testimony crucial to a resolution of the controversy. But, this does not end the matter. Unquestionably, appellant could have advanced its case immeasurably

512 

had it been permitted to tell the jury that Collins' interest was adverse to its case. Nor can it be gainsaid that a vigorous cross-examination might have so shaken his story that the jury disbelieved him. In view of the singular importance of Collins' testimony, I firmly believe that the insurance company was so prejudiced by the trial court's ruling that a new trial must be granted.

I dissent.