Pittsburgh Miracle Mile Town and Country Shopping Center, Inc., Tax Appeals.

Argued June 5, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Philip Baskin,* with him *Baskin, Boreman, Sachs, Gondelman & Craig,* for Pittsburgh Miracle Mile Town and Country Shopping Center, Inc.

*John F. Murphy,* Assistant County Solicitor, with him *Maurice Louik,* County Solicitor, for Board of Property Assessment, Appeals and Review of the County of Allegheny.

*Richard L. Rosenzweig,* Borough Solicitor, with him *Rosenzweig & Rosenzweig,* for Borough of Monroeville.

*Thomas M. Rutter, Jr.,* School District Solicitor, with him *Goehring, Rutter & Boehm* for Gateway School District.

OPINION BY JUDGE ROGERS, August 2, 1972:

All of the parties to this assessment case, the taxpayer, the Board of Property Assessment, Appeals and Review of Allegheny County (the Board), and the local taxing bodies, appealed the order of the Court of Common Pleas of Allegheny County to the Supreme Court. The appeals have been transferred here.

Involved are two triennial assessments, one for the years 1959, 1960 and 1961, and the other for the years 1965, 1966 and 1967. The taxpayer, Miracle Mile Town and Country Shopping Center, Inc., is the owner of a premises containing a total of 34.519 acres of land located in the Borough of Monroeville, which is a part of the Gateway School District. Undoubtedly because it was acquired by separate transactions, taxpayer's property was at all times relevant to this case assessed for local tax purposes by the County of Allegheny as two parcels; one containing 30.349 acres on which is located the buildings of a shopping center, and the other, an adjacent parcel of 4.17 acres, without buildings. The larger tract fronts on William Penn Highway, a four-lane major thoroughfare. The 4.17-acre tract is located at the rear of the shopping center buildings at a lower elevation, but has frontage on and access to a public highway known as Northern Boulevard. A service road provides access between the tracts.

The taxpayer appealed from the assessment of both tracts for the 1959 triennium and of the 30.349 tract only for the 1965 triennium. The 4.17-acre tract was assessed for both trienniums in the amount of $19,960. The 30.349-acre tract with buildings was assessed for the 1959 triennium at $2,445,860; and for the 1965 triennium at $2,956,950.[1]

---

[1] Adjustments of the basic assessments for additions to or removal of improvements were made in some of the succeeding years in each triennium. No issue has been made as to these.

Assessments in Second Class Counties are and were at all times pertinent to these proceedings provided by law to be made at actual value.[2] It was notorious that assessments in Allegheny County were not made in accordance with actual value. The predominant requirement of uniformity and the ability of some taxpayers of Allegheny County to demonstrate that their properties were in fact assessed at ratios to market value higher than those of similar properties led to two series of cases. Included in the first of these are: *Deitch Co. v. Board of Property Assessment,* 417 Pa. 213, 209 A. 2d 397 (1965); *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A. 2d 389 (1965); *Rieck Ice Cream Co. Appeal,* 417 Pa. 249, 209 A. 2d 383 (1965); and *H. J. Heinz Co. v. Board of Property Assessment,* 417 Pa. 259, 209 A. 2d 418 (1965). In this first series of cases, the Supreme Court held: (1) that real estate in Allegheny County is to be assessed at its actual value; (2) that as a practical matter properties in Allegheny County were assessed at less than market value; (3) that the Constitution of Pennsylvania, Article 9, Section 1 (now Article 8, Section 1) requires that all taxes must be uniform; (4) that uniformity means for the purpose of assessment that each taxpayer's property be assessed at the ratio fixed as the common level in the taxing district which is in the county; (5) and that where such ratios, as was the case in Allegheny County, vary widely an average of such ratios may be considered the common level. *See Valley Forge Golf Club, Inc., Tax Appeal,* 3 Pa. Commonwealth Ct. 644, 285 A. 2d 213 (1971). Among the cases in the same series, the holding of which it is

---

[2] Compare the Fourth to Eighth Class County Assessment Law requiring the chief assessor to determine the actual value of properties and that properties be assessed at a pre-determined ratio of actual value fixed by County Commissioners, Section 602 of the Act of May 21, 1943, P. L. 571, as amended, 72 P.S. §5453.602.

not necessary to state, was *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 243, 209 A. 2d 394 (1965). This was that portion of the instant case as relates to the assessments for the 1959 triennium, and the Supreme Court remanded the record for further proceedings.

The second series of cases resulting from the failure of Allegheny County taxing authorities to assess properties at actual value or otherwise establish a uniform ratio which would satisfy property owners, consists of: *Massachusetts Mutual Life Insurance Co. Tax Asesssment Case,* 426 Pa. 566, 235 A. 2d 790 (1967); *Federal Cold Storage Co. Tax Assessment Case,* 426 Pa. 573, 235 A. 2d 800 (1967); *Crescent Realty and Investment Co. Tax Assessment Case,* 426 Pa. 575, 235 A. 2d 799 (1967); *Fifth and Wood Realty Corporation Tax Assessment Case,* 426 Pa. 577, 235 A. 2d 798 (1967); *Regional Industrial Development Corporation of Southwestern Pennsylvania Tax Assessment Case,* 426 Pa. 578, 235 A. 2d 797 (1967); *Stanley Co. of America, Inc. Tax Assessment Case,* 426 Pa. 581, 235 A. 2d 800 (1967); *F. W. Woolworth Co. Tax Assessment Case,* 426 Pa. 583, 235 A. 2d 793 (1967); *W. T. Grant Co. Tax Assessment Case,* 426 Pa. 587, 235 A. 2d 796 (1967). In these the taxpayers produced the testimony of Dr. Raymond L. Richman, an economist, who had made a study of the sales of real estate in the county and had compared assessed values to sale prices in order to arrive at the ratio actually used. For the years 1958, 1959 and 1960 Dr. Richman examined all sales, for the year 1961 he used Census Bureau figures, and for the years 1962 and 1963 he used a sampling technique. The Allegheny County courts accepted and used Dr. Richman's ratios thus established and its action in this regard was affirmed in the cases cited. In the *F. W. Woolworth Co. Tax Assessment Case, supra,* he testified that the ratio

for 1959 was 41.4 percent, and that ratio was used there for the 1960, 1961 and 1962 triennium.

By the time the record remanded by the Supreme Court was scheduled for trial in the court below, the taxpayer had appealed from the triennial assessment of its 30-acre tract for the years 1965, 1966 and 1967, and that appeal was consolidated for trial with the remanded appeals of the 1959 triennial assessments of both the 30- and 4-acre tracts. Pretrial conferences were held, participated in by the taxpayer and the Board of Property Assessment, Appeals and Review, the only respondent then of record. It was agreed that the ratio for the 1959 triennium to be applied to the court's determination of actual value should be Dr. Richman's 41.4 percent.[3] Eight days before the scheduled trial date and after the pretrial conferences, the Borough of Monroeville was granted leave to intervene as a party respondent. Gateway Area School District was permitted to intervene on the day the trial commenced.

At the trial the taxpayer produced the testimony of two expert real estate appraisers who expressed their opinions as to the actual value of the *34.519 acres,* based chiefly upon the capitalization of the average net income of the shopping center for the three years immediately preceding each triennium. Although the taxpayer states in his history of the case that his experts took into consideration various factors in their valuations, one of the experts testified preliminarily to giving his opinion of value ". . . that the predominating and only approach as far as value, in my opinion, that is valid is the capitalization approach." The other said ". . . the individual purchasing it is interested strictly in it primarily in the income stream but with looking up the quality of construction as far as reproduction costs

---

[3] It was stipulated by all parties that the ratio for the 1965 triennium was 50 percent.

are concerned." The Board produced one expert real estate appraiser who also valued only the 34.519-acre entirety but who considered the value not only as indicated by the income but also as indicated by cost less depreciation and by actual sales in the market of other commercial properties in the vicinity. As might be expected, the opinions of values varied widely. One of the taxpayer's experts believed that the 1959 value of the property was $3,700,000 and the other either $3,800,000 or $3,900,000. One of these witnesses believed that the 1965 value was $2,900,000, and the other $3,000,000. The Board's witness testified that his net income calculations suggested values of $4,820,000 for 1959 and $5,320,000 for 1965; that his cost less depreciation calculations indicated a 1959 value of $5,000,000 and a 1965 value of $6,200,000. He testified as to sales of properties in the vicinity. After considering all factors and all approaches, he formed the opinion that the property in 1959 was worth $4,800,000 and in 1965 $5,500,000.

On the subject of the ratio to be applied to the 1959 value, counsel for the taxpayer submitted Dr. Richman's 1959 ratio of 41.4 percent because it had been agreed upon at pretrial conferences and was appropriate in virtue of the 1967 Supreme Court cases. Counsel for the Borough of Monroeville which, as noted, had intervened eight days before trial, although the case had been pending for more than four years since remand, objected on the ground that the Richman report was not physically produced for examination by the Borough, that Dr. Richman was not present for examination and cross-examination, that the findings of ratio in that report, although accepted by the court and affirmed by the Supreme Court in other cases, were not binding in this case, and that, although Dr. Richman had testified his finding of ratio was 41.4 percent for 1959, none of the 1967 cases affirmed by the Supreme Court involved the

triennium beginning with the year 1959. The Borough offered into evidence the Pennsylvania State Tax Equalization Board's computations for the years 1959 through 1969, indicating a ratio of assessments to sales of about 50 percent. The lower court accepted and used Dr. Richman's ratio of 41.4 percent and refused to admit the State Tax Equalization Board data.

As we have noted, no party below produced evidence of the value either of the 30-acre tract with buildings, exclusive of the four-acre parcel, or of the four-acre parcel exclusive of the 30-acre tract. If the witnesses had so testified the task of the hearing judge and of this court would have been made easier. Technically, the hearing judge might well have dismissed the appeals at the conclusion of the taxpayer's case, there being no evidence then before him (other than that of the assessments) of a value of either of the properties involved in the 1959 appeal or of the 30-acre tract involved in the 1965 appeal. The taxing bodies' case proceeded along the same line. However, its expert, an obviously astute and well qualified appraiser, in describing his consideration of the income approach, referred to eight of the total of 34.519 acres as being "excess acreage" not used for shopping center purposes. Part of these eight acres were the four-acre separately assessed property. The balance was unused frontage on William Penn Highway. Although subjected to rigorous cross-examination, the witness repeatedly rejected the suggestion that the value of any part of the excess eight acres, including the appealed four-acre parcel, might be ascertained by dividing by eight the figure he had put on the total. He conceded, as a matter of mathematics, that if his valuation of these eight excess acres were so divided a per acre value in 1959 of $40,000 and in 1965 of $65,000 would be produced.[4]

---

[4] These per acre figures were injected into the case by the taxpayer's counsel. The witness testified with supporting compa-

The court below considered and recited in its opinion the testimony of all of the experts. It concluded that the 1959 value of the 34.519-acre property, being both properties whose assessments were appealed for that year, was $4,800,000, and that the same property was worth $5,300,000 in 1965. These conclusions are clearly supported in the evidence. After thus determining the values for the 34.519-acre property, the court was required to make an adjustment for the separately assessed 4.17 acres. This it did by applying the 41.4 percent ratio to the respective 1959 and 1965 valuations and by deducting from the product thus obtained the assessment in each year of the 4.17-acre tract.

We arrive, finally, at the several contentions of the parties on this appeal.

The taxpayer contends that the court included the 4.17 acres at rates of $40,000 and $65,000 per acre in its determination of market values and then deducted from the assessment based on this figure only the actual assessment of the 4.17 acres at a figure of $19,960. It argues that the court should have first deducted approximately $160,000 from the 1959 assessment and approximately $260,000 from the 1965 assessment, applied the 41.4 percent ratio and then deducted the $19,960 figure. We disagree. First, as we have indicated, there is no evidence that the 4.17 acres was itself worth $40,000 per acre in 1959 and $65,000 per acre in 1965.[5] Further,

rables that the eight acres in question, in his opinion, averaged in value about 90 cents per sq. ft. in 1959 and about $1.25 per sq. ft. in 1965. But again he repeatedly stated that he had not been asked to and had not placed a specific value on the 4.17-acre tract.

[5] Indeed, in rebuttal, one of the taxpayer's experts testified that the four acres in question would have a value of about $10,000 per acre in 1959 and on cross-examination $12,000 or $13,000 per acre in 1965. Since these were the only separate valuation figures, other than the assessment of the 4.17 acres, the $10,000, $12,000 or $13,000 per acre figures would be the only figures on this record

as we have noted, the suggestion that the court mis-
apprehended the testimony assumes that its $4,800,000
valuation in 1959 and the $5,300,000 valuation for 1965
were based upon the county expert's income approach
calculation, because it was only in those computations
that that witness placed a separate value on the eight
excess acres. In fact, the lower court specifically re-
jected the county expert's income approach valuations
on the ground that the capitalization was improperly
done. It is apparent to us that the court, as it said it
did, made its own determination of the market values
in both years based on all of the evidence. The 1959
figure of $4,800,000 happens to be close to the county
expert's valuation based upon income. It is, however,
the *exact* figure that witness reached upon consideration
of all factors. The court's determination of a value of
$5,300,000 in 1965 is $200,000 less than the county
expert's opinion of value on that date. In short, we
believe that the court's finding of value of this 34.519-
acre shopping center has support in the record, and
that, in view of the manner in which the case was pre-
sented by both sides, its computation of assessment by
applying the 41.4 percent ratio to that value and then
deducting the assessment of the 4.17 acres was proper.

The dimensions of our review in this kind of case
are small. The findings of the court of common pleas
must be given great force and may not be set aside by
us unless clear error appears. *Park Drive Manor, Inc.
Tax Assessment Case,* 380 Pa. 134, 110 A. 2d 392 (1955).
The lower court's findings of value have justification
in the record. For the reasons we have hereinbefore set
out, we believe that the taxpayer has misapprehended

---

appropriate for deduction from the court's determination of the
market values of the whole, if we were to conclude that such should
be done.

the court's findings, which were not based solely upon one portion of one witness's testimony but, as the opinion states, upon the whole record. Further, from a practical standpoint, substantial justice was here achieved. As we have previously noted, the 1959 triennial assessment of the 4.17-acre tract was appealed from. If we should conclude that the court included the 4.17 acres at $40,000 per acre in the value given to the 34.519-acre tract, we would be compelled to conclude that it just as erroneously failed to place the same actual value upon that parcel.

At the hearing, the taxpayer offered to call a member of the Board as if under cross-examination. It complains of the court's refusal of its offer. The subject is covered by Section 7 of the Act of May 23, 1887, P. L. 158, as amended, 28 P.S. §381, which compels such testimony of persons "whose interest is adverse" to the party calling them. Literally, a member of the assessment board has no interest adverse to a property owner because he has no personal interest in the outcome. *Suckling v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co.*, 426 Pa. 503, 233 A. 2d 279 (1967) ; *Jordan v. Clearfield County*, 107 Pa. Superior Ct. 441, 164 A. 98 (1933). Furthermore, the purpose of the offer, as we understand the colloquy, was to show that the Board did not have in its possession information concerning, and therefore did not consider, the earnings of the shopping center when assessing the property. The only purpose of such testimony would be to overcome the prima facie validity of the assessment. As this was accomplished by the taxpayer otherwise, the court's ruling was not prejudicial. Even if error, it would be no ground for reversal. *Suckling v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co., supra; Rudella v. Lofland*, 213 Pa. Superior Ct. 305, 247 A. 2d 792 (1968).

The taxing bodies raise several issues which we will dispose of briefly. They first contend that the court should not have found the ratio to be 41.4 percent based upon the Richman report. As we have noted, Dr. Richman in other proceedings testified that he had found the ratio for 1959, the first year of the triennium here, to be 41.4 percent and the Board's use of this figure was affirmed by the Supreme Court for the triennium beginning in 1960. We have no doubt, as taxpayer informs us, that this figure was used in settlement of many appeals for the triennium here in question. Furthermore, the figure was, we are informed, agreed upon at pretrial conferences before the taxing bodies came on the record shortly before trial. While no record of the conferences was made as envisioned by Pa. R.C.P. No. 212, the fact of the agreement was asserted by taxpayer's counsel and not controverted by the Board's counsel, who otherwise vigorously prosecuted this case in behalf of the Board. The taxing bodies took the litigation as they found it when they sought intervention at the eleventh hour. They should not be heard to complain of the court's refusal to require the usual means of proving facts previously agreed upon by a party representing the same cause they are pursuing, at least without notice prior to trial that they would demand such proof. In *Commonwealth ex rel. Chidsey v. Keystone Mutual Casualty Co.*, 366 Pa. 149, 154, 76 A. 2d 867, 870 (1950), it was observed ". . . that an intervenor cannot question supported findings of facts made prior to the intervention." While there was here no finding prior to intervention, there was an agreement and in all the circumstances, including the established and confirmed acceptance and use of the Richman figures, the length of time this cause depended in the court below before trial and the lateness of the application for intervention, we would not in any event disturb the court's ruling. We have read the petitions to intervene and, as may be sup-

posed, they make no mention of the subject of ratio. If they had, and if the result would have been delay while Dr. Richman and his report could be produced, the petitions might well have been dismissed. See Pa. R. C.P. No. 2329 (3). Further, if the Richman figure were to be here rejected there would be no evidence of a ratio in the record whatsoever, as the Borough offered only the Tax Equalization Board findings. These the court properly rejected. *LaRose Dwellings, Inc. v. Allegheny County Board of Property Assessment,* 205 Pa. Superior Ct. 587, 211 A. 2d 104 (1965); *Schenley Land Co. v. Allegheny County Board of Property Assessment,* 205 Pa. Superior Ct. 577, 211 A. 2d 79 (1965). We will adhere to those rulings, absent either legislative action or Supreme Court ruling since they were made. *See Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. at 247 n.3, 209 A. 2d at 396 n.3, and Section 17 of the Act of June 27, 1947, P. L. 1046, 72 P.S. §4656.17.

The Borough has briefed the question of the date from which interest upon any refund should be calculated. This was not at issue below and cannot be considered here. It is devoutly to be hoped that, since this litigation has already consumed an inordinate amount of time, attention and expense, the parties will reach agreement on this issue.

The order of the court below is affirmed; the costs shall be divided equally among all parties of record.