Meadowbrook Properties, Inc., Appellant *v.*
Board of Assessment Appeals of Montgomery
County, and County of Montgomery, Township of
Abington and Abington School Dist., Appellees.

Argued April 6, 1978, before Judges WILKINSON,
JR., BLATT and DiSALLE, sitting as a panel of three.

*Franklin H. Spitzer,* with him *Herman C. Fala,* and, of counsel, *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Joseph A. Smyth,* Assistant County Solicitor and *Robert A. MacDonnell,* Solicitor, with them *Daniel B. Michie, Jr., Solicitor,* for appellees.

OPINION BY JUDGE DiSALLE, July 6, 1978:

Meadowbrook Properties, Inc. (Meadowbrook) filed this appeal from an order of the Court of Common Pleas of Montgomery County which fixed the assessed value of property owned by Meadowbrook at $2,000,000. We affirm the decision of the lower court.

Meadowbrook owns 58 acres of improved real property known as Meadowbrook Apartments (Property). Property is a luxury apartment complex located in Abington Township, Montgomery County. It consists of 47 buildings containing 532 apartments which are carpeted and equipped with elaborate appliance packages. On a twenty-nine acre tract adjacent to the Property, Meadowbrook owns and operates a golf course and clubhouse which are used exclusively by tenants of the apartment complex.

For the tax year 1975, Montgomery County assessed the Property for real estate tax purposes at $1,824,700. This assessment was calculated by applying a ratio of 33 1/3% to an estimated fair market value of $5,474,100. Meadowbrook appealed to the Montgomery County Board of Assessment Appeals (Board) requesting that this assessment be reduced. The Board denied this request and Meadowbrook ap-

pealed to the Montgomery County Court of Common Pleas, which heard the matter de novo.

During the course of the hearing, Robert W. Plank testified for Meadowbrook that the maximum fair market value of the Property as of December 31, 1974, was $7,500,000. This value was determined by using the "capitalization of income" approach, which consisted of calculating the net income generated by the Property; adding a rate of recapture for the wasting asset (the building); and then adding a tax surcharge. Mr. Plank verified this determination by using a "market data" approach. Meadowbrook also called as a witness the Chairman of the Board of Assessment Appeals, who testified that the average common ratio which existed in Montgomery County during 1973 was 16.8%. The Chairman further stated that because of inflation and the absence of a general reassessment program, a standard deviation of 3% per year was added by the Board to the previous year's average. He testified that the common level ratio for 1974 was therefore roughly 20%. Finally, Meadowbrook called Dr. Willian M. Shenkel, a recognized expert in tax assessments who testified that the median level ratio existing in Montgomery County during 1974 was 14.5%. He based this finding upon raw data obtained from the Pennsylvania State Tax Equalization Board.

Montgomery County, Abington Township, Abington School District, and the Board presented the expert testimony of Mr. Reaves C. Lukens, Jr. in rebuttal. Mr. Lukens, using a "capitalization of income" approach together with a "market" approach, which included six comparable properties, testified that the fair market value of the Meadowbrook Property was $10,000,000. One primary difference in the "capitalization of income" methods used by Mr. Lukens and Mr. Plank was that Mr. Lukens did not consider a loss

expense item of $100,000 for the club and golf course facilities as a deduction from the Property's gross income.

Upon consideration of all the evidence the lower court determined that the market value of the Meadowbrook Property was $10,000,000. The court also determined that the common level ratio which was applied by Montgomery County in 1974 was 20%. Applying these two figures, the court fixed the assessed value of the Property at $2,000,000. Meadowbrook filed this appeal.

Four issues are raised here: (1) Was it error for the lower court to exclude the $100,000 expenditure for maintenance of the golf course from the Property's expenses?; (2) Was the expert testimony insufficient to support a finding that the fair market value of the Property was $10,000,000?; (3) Was it error for the lower court to determine that the common level ratio utilized in Montgomery County in 1974 was 20%?; and (4) Did the lower court err in failing to weigh the expert testimony given by Dr. Shenkel? In a case such as this, the Court must affirm the decision of the lower court unless clear error is shown. *Pittsburgh Miracle Mile Town and Country Shopping Center, Inc. Tax Appeals,* 6 Pa. Commonwealth Ct. 187, 294 A.2d 226 (1972).

Meadowbrook contends that it was error for the lower court to exclude the $100,000 loss-expense incurred to maintain the clubhouse and golf course situate on land adjacent to the Property in determining its value. It argues that the course was essential to permit the tenants to maintain and project an appropriate lifestyle. As the lower court pointed out, the golf course and clubhouse are located on land adjacent to the apartment complex Property, and are assessed separately from the Property in question. We see no error here.

Nor do we agree that there was insufficient expert testimony to support the court's findings. The court first discussed Mr. Plank's testimony regarding a comparable property:

After making his appraisal via the income approach, Mr. Plank said that he then used the market data approach to verify his findings. According to this approach, he stated that he 'checked several sales of apartment buildings, got a range as to the unit value, and I found one that I thought was highly comparable as to size, income, and that one is the one I relied on from the standpoint of the market data approach, more than any others. That was Old Forge Crossing in Chester County.'

Old Forge Crossing sold for $10,215,000.00. According to Mr. Plank, although the size and the total gross income of Old Forge Crossing and Meadowbrook were almost the same, he assigned an approximately 30% lower value to Meadowbrook for the following reasons: a lower vacancy rate at Old Forge; Old Forge is newer and in a better location; taxes on Old Forge are lower; and, the costs of electricity and club facilities are higher at Meadowbrook. There was no testimony offered by appellant on any other comparables, nor was there any further or more detailed testimony on Old Forge Crossing.

Thus, the court was thoroughly aware of Mr. Plank's entire testimony, not only his "capitalization of income" analysis. It was the court's determination after consideration of this evidence that the analysis offered by Mr. Lukens was the more credible. We quote again, from the lower court's opinion:

The difference in the testimony on the use of comparables by the two experts is quite substan-

tial. Mr. Plank mentioned only one comparable, Old Forge Crossing, and framed its comparison with Meadowbrook only in very general terms, stating simply that the two properties differed in vacancy rate, age, location, and taxes. Mr. Lukens, on the other hand, testified that he used six comparables. He named them all and indicated, as to each, the location, age, number of acres, number of apartments, number of rooms, amenities, gross income, and sales price. Further, he determined for each of the comparables the sales price per apartment, the sales price per room, and the gross rent multiplier that each reflects, taking expenses into account. As a result of his comparisons, Mr. Lukens arrived at a value of $10,000,000.00 for the Meadowbrook Apartments. This figure represents a value of $18,797.00 per apartment, $4,347.00 per room, and a gross rent multiplier of 4.49. This gross rent multiplier is considerably lower than any of the ones for the six comparables cited, and this, Mr. Lukens explains, 'reasonably reflects the all-electric concept of Meadowbrook and the various factors that are involved here.'

We are of the opinion that Mr. Lukens' analysis is more thorough and reliable, and that his valuation of the property is more credible. His market approach was clearly more comprehensive than that of Mr. Plank. With respect to those particular items of expense which, as discussed previously, we deem improper to include for purposes of determining net income, we consider Mr. Lukens' adjustments as to these items to be closer to reality as we understand the situation at Meadowbrook. We cannot explain, nor was there any testimony to suggest why Meadowbrook is having the problems it claims it has.

Perhaps it is management. Clearly, there is nothing in the physical plant or its location, and the occupancy rate, although not 100%, has been good.

As is apparent from its opinion, the lower court thoroughly considered, but chose not to rely upon Mr. Plank's testimony in determining the market value of the Property. It is clear that the weight to be given expert testimony is for the court. *Traylor v. City of Allentown*, 378 Pa. 489, 106 A.2d 577 (1954). Also apparent is the fact that the court did not rely exclusively upon the "capitalization of income" approach to arrive at its determination of the Property's market value. This, moreover, was the only analysis in which the $100,000 loss expense for the golf course item becomes significant. We find no manifest error in the court's treatment of this factor.

Meadowbrook next argues that the expert testimony does not support the lower court's determination of market value. Specifically, Meadowbrook contends that the lower court misunderstood the testimony. Admittedly, the lower court does state in its opinion that Mr. Plank improperly included as an expense deduction from income, the sum of $55,000, representing certain electrical distribution costs. Though the court erred in this instance, this was not prejudicial to Meadowbrook, and is not ground for reversal. *See Pittsburgh Miracle Mile Town and Country Shopping Center, Inc. Tax Appeals, supra,* 6 Pa. Commonwealth Ct. at 197, 294 A.2d at 231. A careful examination of the record reveals that the lower court's consideration of the evidence and its determination of market value are supported by the evidence.

Meadowbrook next contends that it was error for the court to apply a common level ratio of 20%. After a careful review of the evidence, we cannot agree.

"[W]here the evidence indicates that no such fixed ratio has been applied, and that ratios vary widely in the district, the average of such ratios may be considered the 'common level.' " *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 220, 209 A.2d 397, 401 (1965). The record reveals that Meadowbrook called the Chairman of the Board of Assessment Appeals to testify on the issue of ratio. He stated that the ratio fixed in 1974 by the Board, to be applied to market value in 1975, was 20%. His testimony indicated that in 1973, the average ratio was roughly 17%, with 68% of the sales for that year falling within 3 percent of this average. He stated that in order to keep equalization abreast of inflation and because the Board did not verify sales, the Board applied a standard deviation of 3%, which raised the ratio for 1974 to 20%. The only other evidence presented in the record which goes to this issue was the testimony of Dr. Shenkel. The lower court did not consider this evidence because the data from which it was drawn was accumulated from the State Equalization Board.

This brings us to the Appellant's final argument. This is whether the court erred in failing to consider the testimony of Dr. Shenkel. This precise issue was recently decided by this Court in *Appeal of Hoffman Tire, Inc.*, 35 Pa. Commonwealth Ct. 395, 387 A.2d 134 (1978). Based upon the decision reached in that case, we believe that the court did not err in excluding the testimony given by Dr. Shenkel. We affirm.

ORDER

AND Now, this 6th day of July, 1978, the order of the Court of Common Pleas of Montgomery County at Civil Action Docket No. 75-3978, dated February 11, 1977, is hereby affirmed and the appeal filed by Meadowbrook Properties, Inc. is dismissed.