IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Hawknet : 
Properties, LLC, : 
: No. 1283 C.D. 2022
: 
: Submitted: June 4, 2024
Appeal of: Hawknet Properties, LLC :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: July 12, 2024

In this property tax assessment appeal, Hawknet Properties, LLC (Hawknet) appeals from the October 12, 2022 order entered by the Court of Common Pleas of Philadelphia County (trial court), which denied Hawknet's motion for post-trial relief. Upon review, we affirm.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Hawknet is the owner of 2403 North 57th Street (Property) in the City of Philadelphia (City). The City assessed the Property's value for tax years 2020, 2021, and 2022 at $211,100. Hawknet filed a timely appeal of the 2020 assessed value to the City's Board of Revision of Taxes (BRT), which denied the appeal.[1] Hawknet subsequently appealed the BRT's decision to the trial court. The trial court conducted a non-jury trial on July 22, 2022, at which the City introduced the Office of Property Assessment's assessed values of the Property for the years 2020 through 2023. In response, Hawknet introduced portions of a motion for protective order that it filed

---

[1] The BRT's decision also applied forward to tax years 2021 and 2022. *See* Section 518.1(b) of The General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of December 28, 1955, P.L. 917, 72 P.S. § 5020-518.1(b).

during discovery containing allegations regarding the Property and other properties located in the same city block. Specifically, Hawknet relied upon the following allegations that were admitted by the City:

> 4. The [Property] is one of eight residential houses on the block of North 57th Street, all of which are on the same side of the block.
>
> 5. The eight houses in total are comprised of four sets of twins.
>
> 6. The opposite side of the 2400 block of N[orth] 57th Street is the property for Samuel Gompers Public School.
>
> 7. The average market value of all seven other houses (excluding [the Property]) is approximately $126,000[], with a range of market values from $122,000 to $128,000.

(Motion for Protective Order, October 29, 2021, ¶¶ 4-7; Reproduced Record (R.R.) at 42.)[2]  Hawknet introduced tax records for the seven other properties referenced in the motion for protective order, which showed the assessed values for each property for the tax years 2015 through 2022. *See id.* Ex. "b"; R.R. at 48-61. Counsel for Hawknet then requested that the trial court assign to the Property an assessed value equal to the average of the assessed values of the seven other properties on the block, which

---

[2] Hawknet also attempted to rely on paragraph eight of the motion for protective order, which alleged that "[a]ll houses on the 2400 block of N[orth] 57th Street had not been subject to modifications, and all were virtually identical in footprint and in living space." *Id.* ¶ 8; R.R. at 43. The City, however, denied this allegation and alleged in response that the "[Property] underwent extensive renovation including[,] without limitation[,] a complete renovation of the electrical system in the house in 2014." (Answer, November 2, 2021, ¶ 8; R.R. at 70.)

We note that Hawknet's Reproduced Record and "Supplement to Reproduced Record" (S.R.) do not comply with Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 2173, which requires that both be paginated in Arabic numerals followed by a small "a" in a reproduced record and a small "b" in any supplemental reproduced record. Pa.R.A.P. 2173. We nevertheless refer to both records herein according to the system of numbering used by Hawknet, except that we omit extraneous zeros preceding the Arabic numerals.

Hawknet's counsel calculated to be approximately $126,000. (Notes of Testimony (N.T.), July 22, 2022, at 33-34; S.R. at 33-34.) *See also id.* at 37; S.R. at 37 ("I guess what I'm asking is that the [trial c]ourt recognize that or find that there's an inequity, there's a gross inequity that's unexplained, and that based on the figures that the City has determined all eight properties' market value[s] to be worth, that the [trial c]ourt, in its discretion, make a determination as to what the fair value, the fair market value of the property is."). Hawknet introduced no other evidence.

In response, the City introduced testimony and evidence from Jamal Pitts, a licensed residential appraiser. Pitts inspected the Property on January 14, 2022, and utilized a sales comparison approach with comparable properties to produce market value appraisals of the Property for tax years 2020, 2021, and 2022. Based on his analysis, Pitts testified that the Property's market value was $245,000 for 2020, $275,000 for 2021, and $300,000 for 2022. Pitts did not perform an appraisal for tax year 2023.

On July 25, 2022, the trial court entered a "Trial Work Sheet," in which it valued the Property as follows: for tax year 2020, $245,000; for tax year 2021, $275,000; and for tax year 2022, $300,000. (R.R. at 144.) Given the timing of its decision and the lack of relevant evidence in the record for tax year 2023, the trial court did not make any findings as to the value of the Property for tax year 2023. *Id.*

On August 4, 2022, Hawknet filed a Motion for Post-Trial Relief (Post-Trial Motion) pursuant to Pennsylvania Rule of Civil Procedure (Pa.R.Civ.P.) 227.1(a). On August 9, 2022, the trial court ordered briefing and oral argument on the Post-Trial Motion. The City filed an answer on September 6, 2022, in which it asserted as new matter that the Post-Trial Motion was improper pursuant to Pa.R.Civ.P. 227.1(g), which prohibits motions for post-trial relief in appeals to the courts of common pleas

from local and Commonwealth agency adjudications. The City further asserted that Section 5505 of the Judicial Code, 42 Pa.C.S. § 5505, prohibited the trial court from amending its order because more than 30 days had elapsed. The same day, the City filed a Motion for Extraordinary Relief in which it requested that the oral argument scheduled on the Post-Trial Motion be stricken. The trial court scheduled the City's motion to be argued with Hawknet's Post-Trial Motion.

During oral argument, the trial court first addressed the City's contention that the Post-Trial Motion was procedurally improper:

> So [the] language in [*Downington Area School District v. Chester County Board of Assessment Appeals* (Pa. Cmwlth., Nos. 1461 & 1462 C.D. 2016, filed July 7, 2017),] is pretty definitive in my mind in terms of whether post[-]trial motions are permitted or not permitted. . . . [T]he [Commonwealth] Court put specific emphasis on the concept that, unless post[-]trial motions are specifically invited by the [trial c]ourt, the filing of them and the acceptance of them by the trial [c]ourt does not mean they are given the imprimatur of being appropriate.

> Now, in this particular case, the [trial c]ourt accepted your motion and then [the trial court] listed it for argument. And that's what brings us here today. So I will hear from you both on the issue of post[-]trial motions as a concept, but we will also hear the merits. And whatever my ultimate decision is, if you[ are] so inclined to appeal, I will let the Commonwealth Court ultimately decide, but I will note to you, [counsel for Hawknet], I don't believe post[-]trial motions are appropriate in statutory appeals. But I will allow you to argue the merits of your motion, nonetheless, to create a full record.

(N.T., 10/11/2022, at 5-6; R.R. at 276-77.) *See also id.* at 12; R.R. at 283 ("I'm not sure that post[-]trial motions are appropriate, . . . but due to the interim order that I [entered] scheduling them for argument, there was enough to lead [Hawknet's] counsel

4

to the view that we would be hearing argument on the merits."). On October 12, 2022, the trial court entered two orders. In the first order, the trial court denied the City's Motion for Extraordinary Relief, noting that, although the Post-Trial Motion was likely improper,

> [the trial court's] [o]rder setting a briefing schedule[] and scheduling oral argument on the [P]ost-[T]rial [M]otion could have reasonably been construed by Hawknet as [the trial c]ourt's explicit acceptance of the [P]ost-[T]rial [M]otion. . . . Thus, the [trial c]ourt denied the City's motion and reached the merit[s] of Hawknet's [P]ost-[T]rial [M]otion. As the [trial c]ourt noted on the record at oral argument, the City is free to raise the propriety of Hawknet's [P]ost-[T]rial [M]otion on appeal to the Commonwealth Court . . . .

(R.R. at 305.) In the second order, the trial court denied Hawknet's Motion for Post-Trial Relief. (R.R. at 306.)

Hawknet now appeals to this Court. Although the trial court did not order the filing of a Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the trial court filed a Pa.R.A.P. 1925(a) Opinion on January 25, 2023. Therein, the trial court recommended affirmance and left to this Court's determination whether "Hawknet, by filing a post-trial motion, waived any or all of its appellate rights." (Trial Court Rule 1925(a) Opinion (Trial Ct. Op.) at 3.)

## II.    QUESTIONS PRESENTED

On appeal to this Court, Hawknet raises several issues, many of which are confusing, repetitive, and overlapping in whole or in part. For effectiveness of disposition, we combine and summarize them as follows: (1) whether the trial court erred by relying upon, and affording evidentiary weight and credibility to, Pitts' testimony; (2) whether the trial court erred in failing to address the evidence showing that the Property was assessed at an increasingly higher value than seven other

5

properties on the same block for tax years 2020, 2021, and 2022; and (3) whether the City's valuation of the Property constituted an impermissible spot reassessment. In response, the City argues that all of Hawknet's issues lack merit and that this appeal is frivolous and sanctionable pursuant to Pa.R.A.P. 2744.

## III.   DISCUSSION[3]

### A.   Timeliness of the Appeal

Before we reach the merits of Hawknet's issues, we first must address whether this appeal is timely. The timeliness of an appeal goes to the subject matter jurisdiction of this Court to hear and decide the appeal, which issue we may raise *sua sponte* at any time. *Commonwealth v. Little*, 314 A.2d 270, 272 (Pa. 1974); *Commonwealth v. Parella*, 834 A.2d 1253, 1255 (Pa. Cmwlth. 2003); *Altieri v. Pennsylvania Board of Probation and Parole*, 495 A.2d 213, 214 (Pa. Cmwlth. 1985).

The trial court entered its "Trial Work Sheet"[4] on July 25, 2022. Assuming that the worksheet constituted a final "order" for purposes of appeal, the 30-day appeal period would have expired on August 24, 2022. *See* Pa.R.A.P. 903(a) (unless otherwise provided, notice of appeal must be filed within 30 days after entry of order from which appeal is taken). Hawknet filed its Post-Trial Motion on August 4, 2022, and the trial court ordered briefing and oral argument. The trial court did not ultimately enter its order denying the Post-Trial Motion until October 12, 2022, from which Hawknet appealed on November 10, 2022. Thus, if the Post-Trial Motion was

---

[3] "Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated." *Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 278 n.2 (Pa. Cmwlth. 2015) (citation omitted).

[4] The trial court did not enter an accompanying "order" denying Hawknet's appeal.

6

improper, Hawknet's appeal clearly is untimely.[5]  If the Post-Trial Motion was proper, the trial court's October 12, 2022 order was the final, appealable order, and this appeal is timely.  *Oak Tree Condominium Association v. Greene*, 133 A.3d 113, 116 (Pa. Cmwlth. 2016).

Pennsylvania Rule of Civil Procedure 227.1(g) provides that "[a] motion for post-trial relief may not be filed in an appeal from the final adjudication or determination of a local agency or a Commonwealth agency as to which jurisdiction is vested in the court of common pleas."  Pa.R.Civ.P. 227.1(g).[6]  Thus, barring circumstances dictating otherwise, the filing of post-trial motions in statutory tax appeals is improper.

Nevertheless, there are circumstances in which post-trial motions may be considered even if otherwise precluded by Rule 227.1.  In *Chaney v. Fairmount Park Real Estate Corp.*, 155 A.3d 648 (Pa. Cmwlth. 2016), the appellant filed a post-trial motion after the trial court denied his petition seeking certain payments pursuant to the Real Estate Licensing and Registration Act.[7]  *Id.* at 649.  *See also* Pa.R.Civ.P. 227.1(c), *Note* (a motion for post-trial relief may not be filed to matters governed by petition practice).  The trial court did not issue an order establishing a briefing schedule or scheduling oral argument on the motion, the parties did not file briefs, and the trial court ultimately did not rule on the motion.  *Chaney*, 155 A.3d at 652.  In determining whether the filing of the post-trial motion excused the appellant's failure to appeal from

---

[5] Hawknet has not sought *nunc pro tunc* relief.

[6] It is not disputed that the BRT is a "local agency" governed by the Local Agency Law, 42 Pa.C.S. §§ 551-555, 751-754.  *Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of the City and County of Philadelphia*, 758 A.2d 1178, 1191 n.19 (Pa. 2000).  *See also Robeson v. Philadelphia Tax Review Board*, 319 A.2d 201, 202-03 (Pa. Cmwlth. 1974).

[7] Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§ 455.101-455.902.

the trial court's order denying his petition, we reviewed our and the Pennsylvania Supreme Court's decisions delineating those situations in which the filing of a post-trial motion will extend an appeal period:

> [A]s we recognized in *In re PP&L, Inc.*, 838 A.2d 1 (Pa. Cmwlth. 2003), this Court continues to permit post-trial practice in those cases where the trial court finds it helpful. . . . In *PP&L*, we gleaned several lessons from the [*Appeal of Borough of Churchill*, 575 A.2d 550 (Pa. 1990), and *Upset Price Tax Sale for Springfield Township*, 700 A.2d 607 (Pa. Cmwlth. 1997),] line of cases. In particular, all of the cases addressed appeals taken from the orders disposing of post-trial motions. In all cases, post-trial practice was permitted where the trial court found it helpful. Also, our Supreme Court expressed a pronounced preference for disposition of statutory appeals on the merits. Ultimately, [in *PP&L, Inc.*], we concluded [that],
>
> > where the trial court accepts and prepares to resolve post-trial motions, the ruling resolving post-trial motions is an order from which an appeal may be taken. Further, where the trial court accepts post-trial motions and schedules written argument on them, the initial order entered after trial is not the appealable order.

*Chaney*, 155 A.3d at 656 (quoting *PP&L*, 838 A.2d at 5-6) (emphasis removed). Ultimately, we concluded in *Chaney* that, because the trial court did not direct the filing of briefs, schedule oral argument, or rule on the merits of the appellant's post-trial motion, and because the parties did not file briefs, "the trial court did not invite the filing of post-trial motions or rule upon the merits of the post-trial motions so as to excuse [the appellant] from timely appealing the trial court's [order denying his petition]." *Id.*

Here, a few days after Hawknet filed the Post-Trial Motion, the trial court scheduled briefing and oral argument, the City filed an answer, the parties filed briefs,

8

and the trial court heard oral argument and ruled on the merits of the motion. In this instance, we conclude that the final order from which Hawknet was to appeal was the October 12, 2022 order denying his Post-Trial Motion. Because Hawknet filed its appeal within 30 days, it is timely. We accordingly have jurisdiction to consider the merits of the issues presented.

## B. Legal Principles Applicable in Assessment Appeals

In evaluating a trial court's disposition of a property tax assessment appeal, we apply the following well-established principles:

> In an assessment appeal, the trial court hears the matter *de novo* and, accordingly, is the ultimate finder of fact. In exercising its role as fact-finder, the duty of the trial court is to determine the property's current market value on the basis of competent, credible, and relevant evidence.
>
> Stated differently, the function of the trial court in a tax assessment case is not to independently value the property, but to weigh the conflicting testimony and values expressed by the competing experts and arrive at a valuation based on the credibility of their opinions. Significantly, the trial court has exclusive province over all matters of credibility and evidentiary weight, and its findings will not be disturbed if they are supported by substantial evidence in the record.
>
> . . . .
>
> Section 402(a) of the Assessment Law requires property to be assessed at its fair market value, 72 P.S. § 5020-402(a), and an expert's testimony as to comparables is admissible to establish a property's market value.

*Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 270 (Pa. Cmwlth. 2015) (internal citations omitted). The order of the presentation of evidence in a tax assessment appeal also is well settled:

> In a *de novo* proceeding in a tax assessment case, the taxing authority bears the initial burden of establishing its *prima facie* case for the validity of the assessment. This is typically

9

done by presenting the official assessment records and the testimony of an assessment officer. The burden then shifts to the taxpayer to respond with credible, relevant evidence to persuade the court of the merits of his position. If the taxpayer fails to do so, then the taxing authority prevails. If the taxpayer meets his burden, then the court may no longer presume the taxing authority's assessments are correct.

*Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011) (internal citations omitted). Where a taxpayer mounts what essentially is a uniformity[8] challenge to a property tax assessment, we have described the taxpayer's burden as follows:

Where a taxpayer claims that an assessment violates the principle of uniformity, the taxpayer admits that the fair market value assigned to his or her property is correct but that other comparable properties are assigned a substantially lower fair market value and when the ratio is applied to that lower value, the owners of the comparable properties pay less than the complaining taxpayer. An assessment is considered [*prima facie*] valid where the assessment record is admitted into evidence, and the taxpayer has the burden to rebut the assessment's validity.

A taxpayer could satisfy his or her burden by producing evidence establishing the ratios of assessed values to market values of comparable properties based upon actual sales of comparable properties in the taxing district for a reasonable time prior to the assessment date. A taxpayer may also meet this burden by offering evidence of assessments of comparable properties so long as the taxpayer also presents evidence to show that the actual fair market value of the

---

[8] Article I, section 8 of the Pennsylvania Constitution requires that "all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax." Pa. Const. art. I, § 8; *Westinghouse Electric Corp. v. Board of Property Assessment, Appeals & Review*, 652 A.2d 1306, 1314 (Pa. 1995)."This means that all real estate is a constitutionally designated class entitled to uniform treatment[,] and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction." *Westinghouse Electric Corp.*, 652 A.2d at 1314.

> comparable properties is different than that found by the
> taxing authority. However, this Court has stated that without
> current market value information regarding the comparable
> properties, the court has no basis upon which to determine
> the issue of uniformity.

*Smith v. Carbon County Board of Assessment Appeals*, 10 A.3d 393, 400-01 (Pa. Cmwlth. 2010) (quoting *Fosko v. Board of Assessment Appeals, Luzerne County*, 646 A.2d 1275, 1279 (Pa. Cmwlth. 1994)). Thus, where a taxpayer challenging the uniformity of his property tax assessment fails to introduce evidence establishing the current market value of the comparable properties with which he is comparing his own, the taxpayer has not, as a matter of law, carried his burden of proof to rebut the presumed validity of the taxing authority's assessment. *Id.* at 401 (citing *Fosko*, *Gitney v. Berks County Board of Assessment Appeals*, 635 A.2d 737 (Pa. Cmwlth. 1993), and *Albarano v. Board of Assessment and Revision of Taxes and Appeals, Lycoming County*, 494 A.2d 47 (Pa. Cmwlth. 1985)).

## C.    Hawknet's Issues

For ease of disposition, we consider Hawknet's issues in an order different from the one in which it has presented them. First, and most importantly, we note that, other than certain admitted allegations in a discovery motion and the City's tax records for seven other properties, Hawknet did not introduce any *actual* evidence of the market values of the Property or any of the others on the block. Because Hawknet failed to introduce such evidence in the trial court, it did not, as a matter of law, rebut the presumed validity of the City's assessed value of the Property, either with regard to the accuracy of the assessment or its uniformity with other comparable properties. Although Hawknet argued before the trial court, and argues again to this Court, that the assessed values of the other seven properties should have been considered by Pitts in performing his valuations and by the trial court in ultimately deciding Hawknet's

11

appeal, such evidence is not competent market valuation evidence that could have given the trial court a basis on which to modify the Property's assessment or invalidate it on uniformity grounds. The trial court therefore did not err in declining to rely on it.

Second, the City did not conduct a "spot assessment" of the Property. A "spot assessment" is a "reassessment of a property that is not conducted as part of a countywide revised reassessment and that creates, sustains, or increases disproportionality among properties' assessed values." *Fasnacht v. Board of Assessment Appeals of Schuylkill County*, 156 A.3d 365, 366 n.3 (Pa. Cmwlth. 2017) (citing *Radecke v. York County Board of Assessment Appeals*, 798 A.2d 265, 267 (Pa. Cmwlth. 2002)). The prohibition against spot assessments precludes entities with the power of assessment from, on their own initiative, reassessing less than an entire county except to correct errors or as otherwise specifically provided by statute. *Vees v. Carbon County Board of Assessment Appeals*, 867 A.2d 742, 747 (Pa. Cmwlth. 2005) (citing cases). Spot assessments do not occur merely because a taxing entity appeals a particular property's assessed value. *Id.* at 748.

Further, although a taxing entity's policy for determining which property assessments to appeal *may*, if discriminatory, violate the Uniformity Clause, that concern is not implicated where, as here, the taxpayer appeals. The mere fact that the City prepared and presented valuation evidence *in response* to Hawknet's appeal, which resulted in an increase of the Property's assessed value, does not, in itself, constitute a discriminatory spot assessment. *See, e.g.*, *Meadowbrook Properties, Inc. v. Board of Assessment Appeals of Montgomery County*, 388 A.2d 1110 (Pa. Cmwlth. 1978) (affirming the trial court in a taxpayer-initiated assessment appeal where, based on the taxing entities' expert witness testimony, the trial court increased the subject

property's assessed value above that originally set by the county). We accordingly reject Hawknet's arguments in this regard.

Finally, with regard to the trial court's reliance upon Pitts' testimony in rendering its findings, we afford substantial deference to the trial court's evidentiary weight and credibility determinations and may not disturb them unless they are not supported by substantial evidence. *Aetna Life Insurance Co.*, 111 A.3d at 279. Hawknet challenges Pitts' testimony on the grounds that Pitts (1) did not adequately consider the assessed values of the seven other properties on the block, (2) did not inspect, or adequately consider the assessed values of, the comparable properties that he utilized to value the Property, and (3) had no authority to act on behalf of the City to reassess the Property's value. (Hawknet's Br. at 10-13.) With regard to the first ground, we already have concluded that the assessed values of the other properties on the same block as the Property are not, in themselves, competent market valuation evidence. Second, Hawknet has not offered any authority for the proposition that an appraiser must either inspect the inside, or consider the assessed values, of comparable properties used in a sales comparison evaluation. Rather,

> [i]n determining market value, "comparables" means properties of a similar nature which have been recently sold. In order to be comparable[,] however, the properties need not be identical. In reviewing sales of other properties, "to compare" means to examine the characters or qualities of one or more properties for the purpose of discovering their resemblances or differences. The aim is to show relative values by bringing out characteristic qualities, whether similar or divergent. Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.
>
> The courts of this Commonwealth have held that shared features between properties can render them substantially

13

similar and able to be compared as a matter of law and that, generally, any dissimilarities is a matter that goes to the weight of the evidence rather than its admissibility or competency.

*Aetna Life Insurance Co.*, 111 A.3d at 279 (citing and quoting *McKnight Shopping Center, Inc. v. Board of Property Assessment, Appeals and Review of the County of Allegheny*, 209 A.2d 389, 393 (Pa. 1965)) (other citation omitted). Hawknet's challenges to Pitts' testimony in this regard go to its weight and credibility, which are matters left to the trial court's discretion. Because Hawknet has not identified any grounds on which we could upset the trial court's determinations in this regard, we decline to do so.

Finally, and plainly, Pitts did not act on behalf of the City in conducting any assessment or reassessment of the Property. Rather, he offered an expert opinion as to the Property's market value in response to Hawknet's own appeal of the City's assessment. This ground also is without merit.

## D.     Whether this Appeal is Frivolous

The City argues that Hawknet's appeal is frivolous pursuant to Pa.R.A.P. 2744[9] in that it does not present any justiciable questions, is readily recognizable as being devoid of merit, and cites to no legal authority opposing the controlling case law that determines its outcome. (City Br. at 21-22.) The City contends that Hawknet has merely asserted the oft-rejected argument that a property should be assessed at the same or very similar dollar amount as other properties nearby. *Id.* at 23. The City does not request an award of attorneys' fees, but, rather, requests that this Court administer an "official rebuke" to Hawknet for filing the appeal. *Id.* The City notes that it is

_____

[9] Rule 2744 authorizes an appellate court to award damages in the form of attorneys' fees or delay damages if it concludes that an appeal is "frivolous or taken solely for delay" or that the appellant's conduct is "dilatory, obdurate, or vexatious." Pa.R.A.P. 2744.

14

"deluged" with such frivolous arguments from tax assessment litigants and that a rebuke here will warn litigants that the advancement of this argument will be sanctioned in the future. *Id.*

> With respect to whether this appeal is frivolous, we are
>
> ever guided by the principle that an appeal is not frivolous simply because it lacks merit. Rather, it must be found that the appeal has no basis in law or fact. Such a high standard is imposed in order to avoid discouraging litigants from bringing appeals for fear of being wrongfully sanctioned.

*Canal Side Care Manor, LLC v. Pennsylvania Human Relations Commission*, 30 A.3d 568, 576 (Pa. Cmwlth. 2011) (citations and quotations omitted). Although we have concluded that all of Hawknet's issues are without merit, the City has not sought an award of attorneys' fees pursuant to Rule 2744, and we will not, in this case, impose them *sua sponte.* Although Hawknet consistently advanced arguments before both the trial court and this Court that have been soundly rejected by our and the Pennsylvania Supreme Court's cases for, in some instances, decades, we cannot conclude that Hawknet's appeal was entirely frivolous or that it engaged in obdurate or vexatious conduct. Further, we do not read Rule 2744 to authorize this Court to impose a sanction for a purportedly frivolous appeal other than an award of damages. We accordingly deny the City's request that we do so.

### IV.  CONCLUSION

Although we conclude that Hawknet's filing of its Post-Trial Motion does not render this appeal untimely, all of the issues raised are without merit. We accordingly affirm the trial court's order. We also deny the City's request for sanctions pursuant to Pa.R.A.P. 2744.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Hawknet          :
Properties, LLC,                  :
                                  :    No. 1283 C.D. 2022
                                  :
                                  :    Submitted: June 4, 2024
Appeal of: Hawknet Properties, LLC   :


## *ORDER*

AND NOW, this 12th day of June, 2024, the October 11, 2022 order of the Court of Common Pleas of Philadelphia County is AFFIRMED. It further is ordered that the City of Philadelphia's request for sanctions pursuant to Pennsylvania Rule of Appellate Procedure 2744 is DENIED.


_____
PATRICIA A. McCULLOUGH, Judge